## HERRING v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7214.

Circuit Court of Appeals, Fifth Circuit.

April 24, 1934.

Rehearing Denied June 8, 1934.

SIBLEY, Circuit Judge, dissenting.

Robert Ash, of Washington, D. C., for petitioner.

Harry C. Weeks and John B. King, both of Wichita Falls, Tex., amici curiæ.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Milford S. Zimmerman, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and Frank B. Schlosser, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

During the year 1926 the petitioner and his wife each owned a 50 per cent. interest in the partnership of C. T. Herring & Son, and they filed separate income tax returns for that year under the community property laws of the state of Texas. In 1926 the partnership owned several ranches in the vicinity of Amarillo, Tex., and its principal business was cattle raising. During that year it leased, for a period of five years, portions of its ranches to sundry individuals and corporations "for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said products." Under those leases the partnership received as cash bonuses therefor a total of $683,793.75. No oil development had been begun on any of the leased land at the dates of the leases, and at those dates there was no oil well within 3½ miles of the leased land. During the year 1926, there was no oil production on the leased land. No wells were sunk on the leased land until the year 1930, during which four wells were sunk, with the result that gas and oil were produced. In the partnership return for the year 1926 a depletion deduction was taken in the amount of $188,-

043.28, being 27½ per cent. of the total amount of bonus receipts. In his income tax return for that year the petitioner deducted from the amount of his gross income one-half of the amount of the above-mentioned deduction taken in the partnership return. This deduction was disallowed by the respondent, with the result that petitioner's distributive share of the partnership net income was increased, and a deficiency of $11,337.29 was determined. The Board of Tax Appeals sustained that action of the respondent. The action of that tribunal is complained of by petition for review.

The question presented is whether the petitioner was entitled to deduct from his 1926 gross income the whole or a part of the amount of the deduction claimed by him on account of depletion. The following are the governing statutory provisions: "In computing net income there shall be allowed as deductions: * * * A reasonable allowance for the exhaustion * * * of property used in the trade or business. * * * In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case," etc. Section 214 (a) (8) (9), Revenue Act 1926, 44 Stat. 26, 26 USCA § 955 (a) (8) (9). "Sec. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that— * * * *

"(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph." Revenue Act of 1926, 44 Stat. 9, 14, 26 USCA § 935 (c) (2).

■■■ For support of the contention of the petitioner much reliance is placed on the decision in the case of Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318, to the effect that where the execution of an oil and gas lease is followed by the production of oil, a depletion allowance must be made in respect to a bonus paid to the lessor. The report of that decision contains no statement as to whether oil was or was not extracted from the leased land during the taxable years in question, 1919 and 1920. But from the report of the decision which was affirmed in that case it appears that the leased land produced oil in each of those years. Murphy Oil Co. v. Burnet (C. C. A.) 55 F.(2d) 17. The court which rendered the decision which was affirmed by the Supreme Court expressly ruled that the depletion allowable to the lessor in an oil lease was limited to actual depletion during the taxable years in question. The decision of the Supreme Court in that case does not support a contention that a deduction for depletion with respect to a bonus payment is allowable to a taxpayer who, during the taxable year in question, received that bonus upon his executing an oil and gas lease covering land which during that year contained no oil or gas well, but in which several years later were sunk wells which produced oil and gas. We think it cannot reasonably be said that the provision allowing, "in the case of * * * oil and gas wells," a deduction from gross income for depletion discloses an intention to authorize the allowance of such a deduction from a taxpayer's gross income in a year in which he had no interest in any then existing oil or gas well, but during which he received a bonus upon his execution of an oil and gas lease covering land which had never been explored for oil or gas by sinking a well or starting to sink one, but in which several years later were sunk wells which produced oil or gas. The deductions from gross income authorized by an above-cited statute are based upon happenings or facts existing during the taxable year in question which are regarded as having the effect of offsetting to some extent the taxpayer's gains or profits realized or accrued during that year, and may involve some return of the taxpayer's capital investment. In the case of Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 275, 69 L. Ed. 660, the court construed and applied the provisions of the Income Tax Law of September 6, 1916, as to deductions based on exhaustion or depletion of mines. The following are extracts from the opinion in that case: "In the case of mines, a specific kind of property, the exhaustion is described as depletion, and is limited to an amount not exceeding the market value in the mine of the product mined and sold during the year. The interest of respondent under its leases in the mines being property, its right to deduct a reasonable allowance for exhaustion of such property, if there be any, during the

taxable year results from the plain terms of the statute, such deduction, since the property is an interest in mines, to be limited to the amount of the exhaustion of respondent's interest caused by the depletion of the mines during the taxable year. We agree with the Circuit Court of Appeals (294 F. 194) that: 'The plain, clear, and reasonable meaning of the statute seems to be that the reasonable allowance for depletion in case of a mine is to be made to every one whose property right and interest therein has been depleted by the extraction and disposition of the product thereof which has been mined and sold during the year for which the return and computation are made.' * * * The deduction for depletion in the case of mines is a special application of the general rule of the statute allowing a deduction for exhaustion of property." As to the measurement or determination of the amount of allowable depletion deduction, the statute applicable in the instant case is different from the one which was construed and applied in the cited case. But the statute applicable in the instant case, we think not less clearly than the one which was construed and applied in the cited case, discloses a legislative intention to allow a deduction for depletion only when depletion occurs during the taxable year in question. In the case of Burnet v. Thompson Oil & G. Co., 283 U. S. 301, 51 S. Ct. 418, 420, 75 L. Ed. 1049, a taxpayer claimed that it was entitled to a deduction from gross income for depletion which would represent not only that year's sustained depletion, but make up for sustained but disallowed depletion in earlier years. In rejecting that claim the court said: "The tax is an income tax for 1918, and in the absence of express provision to the contrary, it is not to be supposed that the taxpayer is authorized to deduct from that year's income, depreciation, depletion, business losses or other similar items attributable to other years. The very fact that Congress denied deductions equal to the sustained depletion in the earlier years negatives an intent that they should be allowed in later years, as if for depletion then sustained. The construction adopted by the court below in effect results in including in the taxable year items referable to other years, and is contrary to the theory of a tax for specific years.

"The nature of the tax as one for annual periods has been repeatedly mentioned in dealing with its application in various situations. The taxable year 1918, and that only, is involved, and deductions applicable to that year only should be allowed."

Petitioner claimed that in the computation of his income tax liability for the year 1926 he was entitled to a depletion deduction from his gross income with respect to the amount of bonuses he received in that year, though in that year there was no depletion or reduction of the oil or gas in place in the land covered by the leases on which the bonus payments were made. It was suggested in argument that, by reason of petitioner's receipt in that year of the large sum in bonuses, depletion allowances made in that year probably would be more beneficial to petitioner than such allowances made in later years were likely to be. It was not claimed that the applicable statute providing for depletion allowances "in the case of oil and gas wells," or any regulation under that statute, contains anything indicating an intention to change the rule that a depletion reduction from gross income in a taxable year in question must be based on depletion which occurred in that year.

We summarize: Petitioner claimed in effect that, without showing that any depletion occurred in the year 1926, he was entitled to a depletion deduction from his gross income for that year. The bonuses he received in 1926 constituted income of petitioner in that year. Burnet v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. 199. The burden was on him to show that he was entitled to the deduction claimed. Brown v. Helvering, 54 S. Ct. 356, 78 L. Ed. ——, January 15, 1934. The depletion charge permitted as a deduction from gross income in determining taxable income "in the case of oil and gas wells" represents the reduction, during the taxable year in question, of oil or gas in place in land in which the taxpayer has an interest. Helvering v. Falk, 54 S. Ct. 353, 78 L. Ed. ——, January 15, 1934; United States v. Ludey, 274 U. S. 295, 302, 47 S. Ct. 608, 71 L. Ed. 1054. No statutory provision which has come to our notice authorizes such a deduction to be based on an expectation, however well founded, that oil or gas remaining in place in land during the taxable year in question will be extracted in subsequent years. Depletion of oil or gas is a result of the production and sale thereof. Palmer v. Bender, 287 U. S. 551, 558, 53 S. Ct. 225, 77 L. Ed. 489. Instead of the applicable statute specifically allowing, "in the case of oil and gas wells," a depletion deduction from gross income in a taxable year in which no depletion of oil or gas is shown

to have occurred, the language of that statute indicates the absence of any intention of the lawmakers to depart from the established rule that a depletion deduction from gross income for a taxable year is allowable only when depletion occurred in that year.

The deduction claimed by petitioner, not being authorized specifically by the applicable statute or any regulation thereunder, was properly disallowed. Burnet v. Thompson Oil & G. Co., supra; Brown v. Helvering, supra.

The petition for review is denied.

SIBLEY, Circuit Judge (dissenting).

The question is whether a percentage depletion is allowable on bonuses received in 1926 for oil and gas leases which are to endure so long as oil or gas is produced when no well was drilled and no oil produced under them during that year, although the oil and gas were present and were produced later. The Board of Tax Appeals denied the allowance because there was no well, and this court denies it because no oil was taken out. One of the pertinent provisions of the Revenue Act of 1926, "In computing net income there shall be allowed as deductions: * * * In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case," occurred in previous acts. The other provision: "In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year," is new. Great difficulty was found under the former provision in estimating the content of an oil and gas reserve under the ground and in arriving at what proportion of it was represented by the operations of a particular taxable year, and also in fixing the value of the reserve under the rules relating to discovery value. To avoid these difficulties Congress in the new provision ignored both the size and the value of the reserve, assumed that the value of any production of oil or gas would on the average be 27½ per cent. original capital investment not to be taxed, and the remaining 62½ per cent. would be taxable income, and provided for its taxation in the year it was received. It is evident that the 27½ per cent. deduction which the statute not only permits but commands must be made in the year that the income which measures it is received and taxed, that it cannot be taken any subsequent year, and that it is entirely independent of actual depletion, being so named because it looks forward or backward to the exhaustion represented by the income received. The purpose and command of the provision is defeated by the decision in this case. The oil and gas were present to be produced, as was, of course, supposed when nearly a half-million dollars were paid in advance for them as bonuses, and as was proven when the wells were drilled. That the lessees by their own choice not to drill the first year should control the taxability of the lessor's bonuses, or that the depletion allowance on the entire bonuses should depend on the production in the taxable year of a few gallons of oil or a few feet of gas seems to me both unreasonable under the general provision for depletion and in contradiction of the special provision for the percentage deduction.

It is true that depletion, like depreciation because of wear and tear and obsolescence, is based on the actual gradual loss of capital. The allowance for wear and tear and obsolescence is, however, always estimated and distributed over the useful life of the property considered, and does not depend on a demonstration of what actually happened to it in the particular taxable year. The allowance for them is a general offset against all income for the taxable year rather than a deduction from some particular item of income, because wear and tear and obsolescence, although a loss of capital, do not directly produce any particular income. Depletion also may sometimes be a mere loss, as when oil or gas runs to waste or standing timber dies and rots. But ordinarily depletion refers to a commercial use of part of a reserved store, as where ore or gas or oil is extracted for sale, or timber or ore or oil is manufactured into lumber or metal or gasoline and sold. In such cases the capital represented by the depletion is used directly to produce income and is converted into it. According to Eisner v. McComber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, only gain is taxable income under the Sixteenth Amendment where a conversion of property is involved. Congress is therefore merely staying on safe constitutional ground in providing for this percentage depletion against income received from oil and gas. If not a constitutional necessity, it is certainly more reasonable, where income is produced by a commercial depletion, to deduct the depletion from the particular income produced by it as an element of cost rather than to make it an offset against general income in some other year. If for example the owner of timber leases it to a sawmiller to be

exhausted over a term of years and is paid as the timber is cut, the actual depletion of his timber by cutting corresponds with his receipt of income and no problem is presented. But if the sawmiller should pay for all after the end of the term, it would be unreasonable to allow the owner depletion in the years the timber was cut when he had no income and no tax to pay, and to tax his whole income without any depletion at the end. So if the whole timber should be paid for in advance. Again, if the timber owner is cutting and selling his own timber, he should be allowed to deduct the value of his timber from the income as received, no matter when the trees were cut or delivered. Although oil and gas are underground and timber is not, both are by the statute depletable and the same principle applies. The bonus on an oil and gas lease is so far as authority can make it merely royalties paid in advance, and both bonus and royalties are the consideration for the oil expected to be recovered by the lessee. Both are equally income to the lessor from his land, and both are alike subject to be reduced by allowance for depletion. Burnet v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. 199; Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318; Bankers' Coal Co. v. Burnet, 287 U. S. 309, 53 S. Ct. 150, 77 L. Ed. 325; Palmer v. Bender, 287 U. S. 551, 53 S. Ct. 225, 77 L. Ed. 489. The income tax statutes have studiously endeavored to tax net income only, and to make just allowances for expenses and for a return of capital lost in producing it. The statute in question nowhere says that the depletion allowance commanded is to be taken when the oil is extracted, but the general provision has always been that a reasonable allowance shall be made according to the peculiar conditions of each case. Construing it as to a bonus, it is said in Murphy Oil Co. v. Burnet, supra, at page 307 of 287 U. S., 53 S. Ct. 161, 164: "Here an anticipated depletion of capital is to be returned from bonus and future royalties, to the extent that the applicable statutes allow, and the problem is to allocate such anticipated depletion to a payment made in advance of its occurrence. This allocation is permitted by the statute." This language is quite at variance with that of the court below quoted in the majority opinion. When this provision was first enacted in 1918, Regulation 45, Art. 215 (d), provided that on the expiration or abandonment of a lease without the removal of any or all of the mineral contemplated by the lease, there must be a return to capital account of so much of the bonus deducted from the recoverable capital as exceeds actual depletion, and that amount must be treated as income the year the lease was ended. This shows that it was understood that the bonus payment was considered depletable in advance of actual depletion, and that if the contemplated depletion does not occur the correction is to be made at the end of the lease. The same regulation has been continued ever since, as Congress has re-enacted the same depletion provision, and it is referred to and its operation approved in Murphy Oil Co. v. Burnet, supra, at page 304, and again at page 306 of 287 U. S., 53 S. Ct. 161, 162, 163. The statutory words: "In the case of oil and gas wells" are directly connected with "other natural deposits." Wells as such were not in the mind of Congress as subjects of depletion, but the deposits of oil and gas and other minerals were in mind, and as shown above, depletion of bonuses on leases was regularly allowed although in most cases, no doubt, actual production is not accomplished in the year the lease is made. When in the act of 1926 Congress again used the expression, "in the case of oil and gas wells" in connection with the percentage depletion, no narrower meaning is to be attributed to it. United States v. Dakota-Montana Oil Co., 288 U. S. 459, 53 S. Ct. 435, 77 L. Ed. 893. On the contrary, even more plainly the receipt of income and not the existence of a well or of production from it is made the generating cause of the depletion allowance. If the tax officer treats a bonus payment as income, he must deplete it 27½ per cent. under the command of the statute.

In Helvering v. Falk, 54 S. Ct. 353, 354, 78 L. Ed. ——, depletion under all the acts through that of 1926 was under consideration and the cases were reviewed with this conclusion: "Whatever may be said concerning the power of Congress to treat the entire proceeds of a mine as income, obviously this statute has not undertaken so to do. The plain purpose, we think, was to tax only that portion of the proceeds remaining after proper allowance for depletion. This allowance represents property consumed, is treated as if capital assets, and no tax is laid upon it. The statute must be so applied in practice as to carry out this purpose." The judgment in the case at bar defeats the statutory purpose and by denying the allowance which the statute commands taxes that part of the money received which ought to be treated as if capital assets.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the decision of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.