## CRABB et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9661.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1941.

HUTCHESON, Circuit Judge, dissenting.

Harry C. Weeks, of Fort Worth, Tex., and Wright Morrow, of Houston, Tex., for petitioners.

Helen R. Carloss, Sewall Key, and Joseph M. Jones, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of

Int. Rev., and Claude R. Marshall, Sp. Atty., Bureau of Int. Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Three married sisters and their brother, all residents of Texas, had deficiencies assessed on their income tax returns for the year 1936. Their petitions for redetermination by the Board of Tax Appeals were consolidated and by stipulation a consolidated petition for review is before us. The Commissioner "restored to income" in 1936 the amount deducted in 1934 as percentage depletion allowances from bonuses received for two oil and gas leases, because in 1936 both leases were surrendered, one having produced nothing and the other a trifling amount of which the taxpayers got $36.98. Because there was some production on the latter lease the Board held the depletion deduction as to it should stand, but upheld the Commissioner's action as to the lease on which there was no production. The Commissioner has not sought review so we express no opinion as to the proper effect of the slight production. The taxpayers raise these questions: 1. Can there be an income charge in 1936 of the sort made when nothing was received in that year? 2. Can the two leases, made on parts of a single tract of land, be considered one "property", so that production from one lease is production from the whole "property"? 3. Is the restored income the individual income of the sisters, or is it community income of each and her husband?

The first two questions are concededly the same as were made and decided against the taxpayer in Sneed v. Commissioner, 5 Cir., 119 F.2d 767. On the authority of that case we uphold the income charge as respects the lease on which there was no production.

The facts pertinent to the third question are these: Mrs. Kate B. Welder, the mother of the taxpayers, on October 28, 1931, conveyed by way of gift to her four children a large quantity of Texas land called the Duval County Ranch "as their separate property and estate and for their sole and separate use and benefit" in fee simple. On Feb. 15, 1932, Mrs. Welder and her four grantees, the married women being joined by their respective husbands, executed an instrument which began, "This instrument of agency, contract and trust", and recited a purpose that the Duval County Ranch and certain personal property should for ten years be managed and conducted as a ranch and farm business, and increased and improved as such under the control of Mrs. Welder and the brother who were named as trustees with very broad powers; and it then conveyed the children's interests in the land in trust to the trustees, "to have and to hold said undivided shares and interests * * * in trust for the term of ten years beginning at the date of the execution of this instrument * * * for the purpose of carrying on and conducting certain farming and ranch businesses as hereinafter more specifically set forth." There followed pages of details about such business. The trust could be amended or terminated prior to the ten years by unanimous consent of the beneficiaries. On expiration or termination for any cause of the trust, the trustees were to reconvey to the beneficiaries. At the very end of the instrument there is the first reference to oil and gas leases, and power is given the trustees, or either of them, to make such leases extending beyond the ten-year term, and "it shall not be necessary for the beneficiaries hereunder or any party to this instrument to join in such leases, but they or he as the case may be are hereby appointed attorneys in fact or attorney in fact of each and every party hereto to execute such lease or leases." By similar words provision is made for selling royalties or other mineral interests. No oil or gas had at the date of the instrument been discovered in the vicinity, and the land had been used only for farming and ranching.

On June 7, 1932, Mrs. Welder made a gift of land in another county to her children, this deed reciting a purpose to make it a part of the above trust, and conveying it to the son and his successor trustees "for the term of ten years beginning Feby. 15, 1932"; and subject to the trust, conveying the land "to said James F. Welder, Jr., Mrs. Elizabeth Wood, Mrs. Madeline Smith, and Mrs. Dolores Crabb as their separate property and estate." The trust agreement of Feb. 15, 1932, is expressly referred to, and with certain exceptions, all the powers and discretions vested by it in the trustees are to apply to this land. It also had been used only for farm and ranch purposes and was not known to be valuable for minerals. The oil development be-

gan in 1934. The leases here involved were on parts of the land in the second conveyance.

■■■■ As to all the lands, aside from the trust, the interests of the married daughters were their separate and not community property. Rev.Civ.Stats.Tex. Art. 4614, Vernon's Ann.Civ.St.Tex. art. 4614. In Texas, oil and gas leases of the kind here made are considered conveyances of a base fee title to the oil and gas in place, so that bonuses and royalties received for the lease are separate property if the land is. Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290; Chesson v. Commissioner, 5 Cir., 57 F.2d 141; Commissioner v. Wilson, 5 Cir., 76 F.2d 766. The taxpayers argue that they have conveyed their separate property to the trustees for a business partnership purpose, and being married women whose disabilities have not been removed, they cannot be partners, so that their husbands are the partners, and they are creditors, owning now only a debt against the partnership, and what is received from it is their husbands' in community. It is alternatively argued that if not a partnership, there is a taxable trust. We do not think it necessary to decide what the trust business is, because the lease and sale of mineral deposits was not included in it. Farming and ranching business was contemplated and the trust was created for that alone. All save the last of the many pages of the instrument relate to that only. The land was conveyed for but ten years, and "for the purpose of carrying on certain farming and ranch businesses." The conveying of a base fee in minerals by lease, or selling them outright was not included. The power of the trustees to convey minerals is a separate and superadded matter, for which the trustees are created expressly the attorneys in fact of the landowners to execute the leases or deeds. They do not convey their title as trustees, but the title of the reversioners, acting as their attorneys or agents. The proceeds come not from the operations of the trust, but from the disposal of minerals which were never conveyed to the trustees. The lease bonuses are separate property.

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

I think it plain that the opinion in the Sneed case which the majority opinion adopts here, erroneously held applicable to the statutory 27½% depletion, or if applicable, erroneously held valid, the regulation of the Commissioner for restoring depletion taken on the cost basis, because as so applied, it is both invalid and unjust. I therefore dissent from the holding that the statutory 27½% depletion taken in 1934 on an oil lease 'cash bonus, received in that year, must be returned as income in 1936, when the lease lapsed without any oil or gas having been produced therefrom.

The statute in making its provision for an arbitrary depletion allowance of 27½% makes no provision for restoring any part of it. The provision in 23(m) [1] on which the majority relies, that the reasonable allowance there provided, shall be made under rules and regulations to be prescribed by the Commissioner, does not support, it defeats the majority view. For, by its clear and definite provisions for a reasonable allowance as contrasted with the fixed arbitrary of 27½% allowed under Section 114(3), 26 U.S.C.A. Int.Rev.Code, § 114 (3), the statute shows beyond question that while the depletion on cost basis was to be a reasonable sum to be allowed under Commissioner's rules, the Statutory 27½% depletion was to be allowed whether reasonable or not, and was fixed not under rules to be established by the Commissioner, but at the arbitrary figure of 27½%.

I think it clear, therefore, that when the taxpayers in the exercise of their option elected to take their depletion on their cash bonus, on the arbitrary, rather than the cost basis, they did so, with the knowledge that they might never get their cost back and might, therefore, be paying taxes not on gains but on capital. Having elected that course with its chances of gain, if their capital cost was low, and of loss if their capital cost was high, they may not be interrupted in midflight, and dashed to the ground by the application to them of a regulation designed for and applicable only to cost-basis depletion.

The opinion in the Sneed case, with, I think, total irrelevance, and with deference,

---

[1] Sec. 23 (m) Depletion.—"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * *" 26 U.S.C.A. Int.Rev.Code, § 23 (m).

without a full consideration of the fact, that the law and regulations apply as well to taxpayers whose costs in the acquisition of oil lands and leases are high, as to those whose costs are low, states, "the percentage depletion allowance is more favorable to the taxpayer, as its choice in this and other cases shows. It ought not to be made still more favorable by making it final in the case of a bonus deduction." This consideration, whether the law is more or less favorable to the taxpayer than it ought to be, is, of course, under our constitutional system, matter for Congress, and not for the courts, and cannot of itself add words to or take them from a statute or permit the Commissioner or the courts to do so. Without doubt, Congress took into consideration the oil business as a whole and determined that the law as enacted would in the long run, while furnishing a simple and workable system, apply justly to both taxpayer and government. Being a general law and not one for an individual case, it applies as well to those who own their oil rights at small cost and to those who have paid large sums for them. It was designed to furnish to those who preferred to take the long run chance that they would get their capital investment back that way, a simple and easy method of doing so, in lieu of the more complicated but more certain method of getting it back, provided under the Commissioner's rules for taking it on the cost basis.

To apply the cost basis rules, promulgated by the Commissioner, to the taxpayers here who have elected, not the cost, but the arbitrary basis, is for the government to keep the promise to the ear while it breaks it to the hope. It is to nullify the statutory grant of an arbitrary depletion, by the application to it of a regulation, not promulgated or intended to apply to such cases, and if intended, without effect as to them, because not authorized by the statute.

It is true enough that by a rough and ready measurement the arbitrary allowance is supposed to produce and perhaps, speaking roughly, does produce, as to tax-

payers as a whole, substantially the same result as the cost basis. But it is equally true as said by the board in this case, in holding that because there was some, though very small production from one tract, there could be no restoration of the depletion allowance, "Percentage depletion is not based on cost and has no relationship to cost. * * * Under the respondent's own ruling [the 1935 G.C.M., 14484, C.B. XIV-1, Page 98], the depletion allowed in 1934 * * * should not be restored to income, because there has been actual production." [41 B.T.A. 686, 700.]

It will be here noted that the ruling referred to and on which the board and the court rely, was made in 1935, after the depletion in this case had been taken and it is made ex post facto in an effort to conform the regulation to a situation it had not been written to apply to, the holding in Herring v. Commissioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389, that a cash bonus was depletable. The ruling of the Commissioner had theretofore been uniform that these regulations did not apply to cash bonuses, that these were not depletable income but were capital gains. When we turn to Treasury Regulation No. 69,[2] promulgated under the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 145, and in force when the depletion was taken, we find its language and effect wholly inconsistent with the construction now contended for it, that it relates to or deals with the arbitrary 27½% depletion.

Nowhere in it is the arbitrary depletion referred to. That is dealt with in Article 221, and no provision is made there for its return. Article 216 in every line of it shows that it is dealing with a situation under which the taxpayer is working on the cost basis. When such a regulation is sought to be applied to an arbitrary depletion, especially when that has been taken as to a cash bonus, which the Commissioner has all along ruled was not covered by this regulation, the taxpayer finds himself in the position of having paid taxes as on income, on money which was really a return of capital. No matter that the courts

---

[2] Art. 216. "Depletion.—Adjustments of accounts based on bonus or advanced royalty.— * * *

"(d) Upon the expiration, termination, or abandonment of the lease, without the removal of any or all of the mineral contemplated by the lease, the lessor shall be required to restore to capital account the excess of the depletion there-tofore allowable in respect of the bonus and royalty payments over the actual depletion or loss in value sustained as a result of the operations under the lease, and a corresponding amount must be returned as income for the year in which the lease expires, terminates, or is abandoned."

have called it a bonus,[3] and then having taken away from him even the small alleviation furnished by the 27½% reduction which under the statute, as construed in the Herring case, had been allowed him. I therefore think it plain that the majority opinion has applied Article 216 to this case, when it was not intended to be so applied.

If, however, I am mistaken in this and it must be considered that the 1926 regulation as interpreted in the 1935 bulletin and the Treasury Regulation 94, promulgated under the 1936 Act,[4] were intended to have application in an arbitrary depletion case, I think it perfectly clear that it is invalid as an attempt to amend or rewrite the Statute to meet the Helvering decision, holding a cash bonus not a return of capital but advance royalty and depletable as such. Since the majority has advanced, as a reason for ruling against the taxpayer, the advantages to the particular taxpayer, of the ruling he contends for, I think I may be pardoned by advancing the unrealities, the unreasonablenesses, the injustices which flow from such an attempt, as stronger arguments against the ruling.

Under the application of this regulation, as contended for by the majority, these unreasonable results not only may occur, they are certain to. A and B own two adjoining tracts of land. A bought his as agricultural land and for a small price. B bought his as oil land and for a large price. A and B lease their land in the same year. Each received a large cash bonus and a royalty; a great deal more than A's cost, a great deal less than B's, each thinking they had an oil field and that it was to his advantage to do so, take the percentage depletion. A, who has a small cost, is lucky again and has a few dollars of production on his land. B, with his heavy cost is still out of luck, and has none. Both leases are abandoned in the same year. B, who has a heavy capital investment and has already paid income on cash received which was far less than his investment, is required because he had no production, to pay income on his depletion. A, who has a small capital investment, because he had a small production, is allowed to keep his full depletion. The statute allowing not a cost but an arbitrary depletion was not intended to operate in that way, and the Commissioner cannot, by regulation, make it so operate. It was intended to operate alike by giving all persons who took that method of depletion the benefit of it without regard to whether they had no, little, or large production. To use the regulation to make it operate differently as between taxpayers is not to carry out the purpose of the statute, it is, by rewriting it, to defeat that purpose.

I respectfully dissent.

---

[3] Charles Pettit v. Commissioner, 5 Cir., 118 F.2d 816.

[4] "If for any reason any such mineral lease expires or terminates or is abandoned before the mineral which has been paid for in advance has been extracted and removed, the lessor shall adjust his capital account by restoring thereto the depletion deductions made in prior years on account of royalties on mineral paid for but not removed, and a corresponding amount must be returned as income for the year, in which the lease expires, terminates, or is abandoned."