## SNEED v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9560.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1941.

Rehearing Denied July 17, 1941.

See 121 F.2d 725.

Harry C. Weeks, of Fort Worth, Tex., and H. C. Pipkin, of Amarillo, Tex., for petitioners.

Joseph M. Jones and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark. Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Int. Rev., and Irving M. Tullar, Sp. Atty., Bureau of Int. Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

The main question is, Where a landowner has made oil and gas leases for which he received bonuses and has taken the 27½ per cent depletion allowances as a deduction in returning this income, and the leases are in a later year surrendered without any production, can the amount of the depletion allowances be treated as income in the tax account for the later year? Another question is whether the landowner may treat his entire ranch, on parts of

which these and other leases were made, as one "property" in respect of depletion, or must he deal with each lease as "the property".

The taxpayer Sneed, owning a tract of 80,000 acres in the Texas Panhandle which he operated as a single ranch, in 1926 after oil and gas had been discovered leased it for such operations in many separate parcels to different lessees for terms of ten years and so long as oil or gas might be produced. Besides the usual royalties, a cash bonus was received on each lease. Many leases were developed and production both of oil and gas secured. Twenty-six of the leases covering about 5,000 acres were not developed, though covering the same gas and oil pool, but were surrendered in 1936. At that date the gas pressures under the ground had, because of production, been reduced an average of 11 per cent, indicating that the gas reserve had been correspondingly diminished. The lands thus freed were by the taxpayer again leased in 1936, but smaller bonuses were received on which percentage depletion allowances were again taken. The Commissioner "restored to income" the depletion allowances deducted from the bonuses in the 1926 tax returns, aggregating (as corrected) $33,528, and assessed additional taxes for the year 1936, relying upon Regulations 69, Art. 216(d) of the year 1926 and Regulations 94, Art. 23(m)-10(c) for 1936, and his General Counsel's memorandum 14,448, XIV-1 Cum.Bul. p. 98, which construed the Regulations with respect to the decision in Herring v. Commissioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389, then recently rendered. It was by reason of the Herring case that the Board of Tax Appeals in November, 1935, allowed Sneed the depletion deductions on his 1926 income taxes. Sneed v. Commissioner, 33 B.T.A. 478. The Board of Tax Appeals sustained the Commissioner's assessment of taxes for 1936, 40 B.T.A. 1136, and this petition for review followed, prosecuted by Sneed's executors.

Since the 80,000-acre tract, throughout which the twenty-six leases in controversy are scattered, has suffered large production and an average 11 per cent depletion of gas reserve as a whole, and since the Board has held in Crabb v. Commissioner, 41 B.T.A. 686, 700, that if there be any production there can be no "restoration to income" of depletion allowances, taxpayer contends it is im-portant to decide whether the whole 80,-000 acres he owns in a body is "the property" mentioned in Revenue Act of 1926, Sec. 204(c) (2), "In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year." 26 U.S.C.A.Int.Rev.Acts, page 154. The Crabb case is now before us on review, but not on the point for which taxpayer has cited it. We express no opinion on that point, but assuming it well decided, we hold that "the property" means generally each separate tract, if operated by the owner, or each separate lease if leases are made. The allowance for depletion, as distinguished from the mode of measuring it, is made (as it has been in prior and later Acts) in the other Sections defining deductions, Sec. 214(9) for individuals and Sec. 234(8) for corporations, thus: "In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion * * * according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary", 26 U.S.C.A. Int.Rev.Acts, pages 167, 187. We think the power to define by regulation extends to the provisions in Section 204(c) (2) touching the alternative percentage allowance as a measure of the depletion, as well as the measure by cost or discovery value. The expression "the property" in reference to percentage depletion admitted of regulatory definition and Regulations 69 (1926), Art. 221, provided: "In general 'the property', as the term is used in Sec. 204(c) (2) and this Article, refers to the separate tracts or leases of the taxpayer." We held the statute and the regulation, as to the owner of tracts which he operated and leases which he worked, prevented his aggregating the properties; Vinton Petroleum Co. v. Commissioner, 5 Cir., 71 F.2d 420. The present taxpayer seeks to distinguish that decision because he worked no property, but only leased his ranch for others to work. We think that by leasing it in separate parcels to different persons he separated it into as many different properties as there were leases made. Each lease stands to itself, and both lessor and lessee are equally bound so to treat it. There is a provision in later Regulations that where "two or more mineral properties are included in a single tract or parcel of land the taxpayer's interest in such

mineral properties may be considered to be a single 'property' provided such treatment is consistently followed." If it applies here at all there is no proof of the consistent treatment by this taxpayer of his whole ranch as one mineral property; it rather appears that the leases have been separately dealt with. Each of the twenty-six leases here involved is a separate property as respects depletion.

█ Turning to the main question, the taxpayer first urges that by the surrender of the leases in 1936, unworked, no income was realized in that year and none can be charged to him. It is not a good reply that Sneed got back the leasehold interest in the land in 1936. If that be the ground of income, the value in 1936 of what he got back would be in question. And in truth he got nothing back; the lease simply perished according to its original terms. The Commissioner's position is not that he got land back but that the occurrences in 1936 developed a change in status of so much of the money income received in 1926 as then went untaxed because it stood for an anticipated depletion of his oil reserve, and being a return of capital was not income subject to taxation. It is too well settled to require further discussion that when oil and gas reserves are leased for bonus and royalty, the bonus is an advance royalty, and includes not only gain which is income but also a return of capital about to be depleted which is not income. The segregation of this return of capital is the purpose of all depletion allowances. As to royalties, the depletion actually happens as the royalty accrues, so the present question can hardly occur. As to the bonus, the depletion has not yet happened, and there was a question whether a deduction therefor could be taken until it did happen. This court, in Herring v. Commissioner, 5 Cir., 70 F.2d 785, said not. The Supreme Court, 293 U.S. 322, 55 S.Ct. 179, 181, 79 L.Ed. 389, reversed, holding the depletion deduction ought to be taken out of the income when the income is received and not when the anticipated depletion occurs. The court foresaw the question we now have in case the lease expires without any actual depletion under it, but expressed no opinion on it. It did, however, say there was no difference in substance between the percentage depletion allowance in case of gas and oil wells and the cost basis depletion allowance which prior to 1926 was the only way of measuring it, and which may still

alternatively be resorted to if it is larger. The court asserted: "The nature and purpose of the allowance is the same in both cases," citing United States v. Dakota-Montana Oil Co., 288 U.S. 459, 467, 53 S. Ct. 435, 438, 77 L.Ed. 893, where it was said of the percentage allowance: "There is no ground for supposing that Congress, by providing a new method for computing the allowance for depletion, intended to break with the past and narrow the function of that allowance. The reasonable inference is that it did not, and that depletion includes under the 1926 act precisely what it included under the earlier acts." In fact in all the Acts the allowance is authorized, as above pointed out, in identical words in Sections providing the deductions from income. Its measure is always set forth in widely separated Sections, whether by a percentage which is assumed to fairly represent the return of capital, or by a calculation on the basis of cost and actual removal of minerals.

█ The deduction for depletion from a bonus received never represents an actual but always an anticipated depletion. If the anticipated depletion does not occur and it becomes certain it never will, it then becomes plain that what was thus deducted is not a return of capital, but gain like the remainder of the bonus paid. An adjustment is due. Should it be made by reopening the tax settlement for the year the bonus was received and the deduction taken? That would be most logical and accurate. But the limitation statutes, which would prevent it in this case, do not provide for it, and administrative convenience is against it. The Commissioner from the very beginning, under the broad regulatory power attached to every authorization of the deduction for depletion, solved the problem by requiring an addition to income in the year when the status as income of the amount deducted becomes clear. The provision was carried forward in the 1926 Regulations 69, Art. 216(d): "Upon the expiration, termination, or abandonment, without the removal of any or all of the mineral contemplated by the lease the lessor shall be required to restore to capital account the excess of depletion theretofore allowable in respect of the bonus and royalty payments over the actual depletion or loss in value sustained as a result of the operations under the lease, and a corresponding amount must be returned as income for the year in which the lease expires, terminates, or is abandoned." In

that year (and since) there was added "(e) In lieu of the treatment provided for in the above paragraphs, the lessor of oil and gas wells may take as a depletion deduction * * * 27½ per cent, etc." It is argued that while the cost or discovery value basis deduction is and always has been subject to (d) above quoted, the meaning of (e) is that the percentage deduction is absolute and final. The Commissioner's General Counsel did not think so when he ruled upon the matter in 1935, after the decision in the Herring case, XIV-1 Cum.Bul., p. 98; but he held that the meaning of the Herring case, in connection with Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318, which dealt with a cost-basis depletion allowance and referred with approval to the Regulation under discussion, was that the deduction was the same in nature and purpose however measured, and the Regulation meant to treat them alike when the lease ended without production. This amounts to saying that (e) is in lieu of (a) (b) (c) and of (d) perhaps so far as it speaks of a capital account, but not so far as restoration to income is concerned. The percentage depletion allowance is more favorable to the taxpayer, as its choice in this and other cases shows. It ought not to be made still more favorable by making it final in the case of a bonus deduction. The whole reasoning in the Herring case is that Congress intended to allow a simple measure of the deduction to be substituted for a complicated one, but to leave the nature of the deduction as fixed by the Regulations otherwise unchanged. We adopt that view. Sneed took his deductions in 1926, under the law and Regulations then existing, and he is bound to restore them to income in 1936 when it became certain that the supposition of a return of capital was untrue, and they were revealed as pure gain.

The charging as income in 1936 of gain actually received in 1926 involves no constitutional question. Under the Sixteenth Amendment, that which is not income cannot be taxed as such, but there is no requirement as to the year in which income shall be taxed. Congress could fix decennial periods instead of annual ones. It has in general adopted the annual plan, but has authorized either actual receipts and disbursements or accrual as the basis of the accounting. On the latter basis, there may be a difference of years in entering the items on the account from what would have been true on a basis of actual receipts and disbursements. But these two bases are elastic, for in the Revenue Act of 1926, Sec. 200(d), 26 U.S.C.A. Int.Rev.Acts, page 146, which directs income and deductions to be accounted for in the year received and paid or accrued, there is an exception: "Unless in order to clearly reflect the income the deductions or credits should be taken as of a different period." Similar language occurs in the other Acts. The clear reflection of income that ought to be taxed is the main object. See Guaranty Trust Co. v. Commissioner, 303 U.S. 493, at page 498, 58 S.Ct. 673, 82 L.Ed. 975. With or without the aid of a Regulation, there have been many cases of this so-called "restoration to income" of a deduction taken in a prior year. On the accrual basis, if a tax, or expense, or other deduction is taken one year as accrued, but it turns out in another year that there was no such liability or a less one, the matter is corrected by a charge to income as though there had been a recovery back. Charleston & W. C. Ry. Co. v. Burnet, 60 App.D.C. 192, 50 F.2d 342; Chicago, R. I. & P. Ry. Co. v. Commissioner, 7 Cir., 47 F.2d 990; Nash v. Commissioner, 7 Cir., 88 F.2d 477. So when on a cash basis a debt is deducted as bad and in another year is collected in whole or in part, the matter is corrected not by going back to the year of deduction, but by a charge to income in the later year. Askin & Marine Co. v. Commissioner, 2 Cir., 66 F.2d 776; Putnam Bank v. Commissioner, 5 Cir., 50 F.2d 158. And when property is sold to be paid for in instalments, and only part of what is paid is returned as gain, but the property is gotten back without any refund, so that all that was received turns out to be gain, the addition is made to income in the year the additional gain appears to be such. Compare Walker v. Thomas, Collector, 5 Cir., 119 F.2d 58. So when a deduction for an exempt reserve is taken, and the reserve is released in a later year, the released fund is taxed as income in the latter year though not earned then. See Maryland Casualty Co. v. United States, 251 U.S. 342, 352, 40 S.Ct. 155, 64 L.Ed. 297. Commissioner v. Dallas Title & Guaranty Co., 5 Cir., 119 F.2d 211. See also Wichita State Bank v. Commissioner, 5 Cir., 69 F.2d 595; Marine Transport Co. v. Commissioner, 5 Cir., 77 F.2d 177. Even though the applicable Regulations be thought not wholly clear, we think the

Commissioner's action was just and justified.

It is further argued that since the Revenue Act of 1932, Sec. 113(b), 26 U. S.C.A.Int.Rev.Acts, page 518, dealt with adjustment of the basis for computing gain or loss in sales in respect of percentage and discovery value depletion allowances prior to 1932 without referring to the matter of leases ending without production, no adjustment for the latter can be had. We do not think our present problem is so related to the provisions of that Section as to be affected by it. Neither a sale nor the cost basis for computing gain or loss thereon is here involved.

In summation, we are of opinion that where there is omission or error in an annual return, correction generally is to be made on that return within the statutes of limitation; but in special cases, because of misrepresented facts creating an estoppel, the taxpayer in a later return may be held to those facts. But where the return is correct on the facts as they were when it was made, but occurrences in a later year alter the case, the adjustment is generally to be made in the latter year. This does substantial justice, gives more stability to the annual tax settlements, escapes the complication of limitation statutes, and serves administrative convenience. This case comes within the latter rule.

Affirmed.