## DRISCOLL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11048.

### Circuit Court of Appeals, Fifth Circuit.

### Feb. 22, 1945.

J. P. Jackson and S. G. Winstead, both of Dallas, Tex., for petitioner.

John F. Costelloe, Sewall Key, and Robert N. Anderson, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

After construction of the hotel building of the taxpayer had progressed to the point where a part of the air-conditioning system had been installed, for which fans, motors, and other material had been delivered, taxpayer concluded that some radical changes should be made in the plans and size of the building, and that the air-conditioning system was inadequate. Considerable work had been done and materials used which had to

be torn out in making these changes, with the following consequences as aptly stated by the Tax Court: "As a result of these changes the insulated metal cold air ducts, already installed, were removed. This could only be and was done by a destruction of the material. In addition to the air cooling system the changes necessitated the removal of other materials already installed with a consequent labor cost. In some instances the material so removed could only be disposed of for scrap. In others, material specially fabricated and not yet delivered by the manufacturer was retained by him and an allowance was made on the bill for such material. Some materials were returned to the manufacturer and a cancellation charge made by the latter. The total cost to petitioner of these changes in construction was approximately $500,-000."

The cost of the changes in air-conditioning and plumbing, together with additional fees to architect and contractor, which petitioner claims was a loss deductible from her income for the tax year of 1940, was $61,160.70. The disallowance by the Commissioner of Internal Revenue of the deductions was approved by the Tax Court.

In addition to the foregoing contention, the taxpayer also shows that in prior years she had executed certain oil and gas leases on large areas of her land, and, in addition to the retention of one-eighth royalty, she had received a bonus of $5 for each acre embraced in said leases, against which bonus payments taxpayer had, during the year received, deducted depletion allowances of 27½% in making her tax return. In subsequent years substantial portions of the acreage covered by these leases were relinquished and surrendered to the petitioner by her lessees, prior to any production of oil from the leased lands.

Commissioner, directing the restoration to her 1940 income of that proportion of the depletion allowances theretofore taken which the acreage released from each lease bore to the total acreage in that lease, assessed deficiencies against the taxpayer in the amount of such restoration. This was done on the theory that these amounts represented the proportion of the depletion previously allowed on bonuses received for those portions of leases which had been terminated without having produced any oil for depletion.

We agree with the Tax Court in its conclusion that taxpayer was not entitled to deduct as an expense the items claimed as losses wrought by changes in connection with the construction of the hotel, and that cost of changes in design made before or during construction, whether these changes are necessitated because of mistake or otherwise, are but a part of the cost of the structure as finally completed. Extra expenses due to errors in plan and design are a part of the cost that the building traffic must bear. As the Tax Court well said: "The acceptance of petitioner's theory would result in a deductible loss in practically every construction project. Common experience tells us that no construction job is carried out with such perfection that some material, because of error, mistake, or even slight change in design, is not removed and therefore does not remain a part of the completed structure. Such expenditures are, we think, clearly a cost of construction."

The decision of the Tax Court in this respect is approved.

This brings us to a consideration of the second contention relative to the return to income of such portion of the depletion allowed on bonus payments as the acreage released from the oil and gas leases bears to the total acreage embraced in the leases.

As long as the confusing concept is adhered to that a bonus paid for signing a lease is not consideration for the lease but is an advance payment on royalty and subject to depletion, perplexities will continue to arise. The statute (26 U.S.C.A. Int. Rev.Code, § 23(m) provides for a reasonable allowance for depletion in the case of "mines, oil and gas wells." Paragraph (b) (3), Sec. 114, Title 26, U.S.C.A. Int.Rev. Code, provides for 27½% depletion "in the case of oil and gas wells", and no statutory authority has been pointed out for the allowance of depletion except in the case of an oil or gas well, nor as to how there can be depletion in law when there has been none in fact.

However, the decision of the Tax Court sustaining the Commissioner was not based upon the proposition that depletion is allowable only in case of oil or gas wells and not in case of the sale of a lease to lands merely believed to contain oil and gas, but the question is whether or not taxpayer should now be required to return as income the depletion on those portions of the acreage embraced in the leases which were surrendered to the lessor during the tax year. Respondent contends that such

surrender is a pro tanto expiration, termination, or abandonment of the lease within the terms of the regulation.[1]

Depletion of oil and gas should not be measured on the acreage basis, for it is possible for one well on a small fraction of one acre to deplete gas and oil on many surrounding acres. Some states forbid more than one well to each forty acres. Except for the synthetic depletion that occurs upon the acceptance of a bonus in connection with the execution of a lease there can be no depletion except by drilling a well. In actuality it ordinarily requires an activity under a lease to produce oil and cause depletion. Under the decisions the lessor has the right to anticipate production in taking depletion, and there seems to be no reason the lessor could not continue to anticipate production so long as the lease has not been terminated, abandoned, or fully exploited.

Depletion, synthetic or real, is not measured on an acreage basis, nor can it be said that the grant of mineral rights has expired, terminated, or been abandoned so long as the privilege or lease exists and activity under such grant looking to production may reasonably be expected. The decisions of this Court in Sneed v. Commissioner of Internal Revenue, 5 Cir., 119 F.2d 767; Commissioner of Internal Revenue v. Seeligson, 5 Cir., 141 F.2d 358; and Crabb v. Commissioner of Internal Revenue, 5 Cir., 119 F.2d 772, are contrary to the contentions of the Commissioner and the views of the Tax Court.

The regulation of the Commissioner provides for restoration to income of the depletion taken when there has been no production and the lease has expired, terminated, or been abandoned, and the Commissioner may not stretch his regulation so as to construe it to be applicable when "any part of the lease has expired, terminated, or been abandoned".

The decision of the Tax Court in reference to the disallowance of deductions for changes in the construction of the building was correct and is affirmed, but its decision requiring the restoration to income of the depletion allowances in the leases terminated only in part is disapproved and reversed.

Affirmed in part and reversed in part.

HOLMES, Circuit Judge (dissenting in part).

The exact question here raised with respect to the restoration to income of anticipatory depletion deductions has not been decided by any appellate court; but the principle of depletion allowances, the language of applicable statutes and regulations, and the reasoning in related authoritative decisions, convince me that the deficiency was properly assessed.

Depletion is allowed upon the theory that gross income is produced from a wasting capital asset, and to the extent that the capital is exhausted in production no taxable income is realized. Thus anticipatory depletion allowances do not come within the concept unless some production takes place to exhaust in part the capital. For this reason, Article 23(m)-10(c) of the Regulations was promulgated, and for this reason its validity has been sustained. As the court said in Douglas v. Commissioner, 322 U.S. 275, 281, 64 S.Ct. 988, 992: "Article 23(m)-10(c) was developed to take care of the type of situation where because of a lease's cancellation without extraction, the reason for allowing depletion disappeared. As no diminution occurred in the ore mass, no depletion was appropriate."

If the abandoned acreage had been separately leased and the entire lease surrendered, undoubtedly the whole of the depletion deduction allowed upon the income therefrom would have to be restored to income.[2] Are the actualities of what occurred here so substantially dissimilar that the abandonment does not come within the letter or spirit of the regulation and that the tax incidence of the transaction must be measured differently? I think not. These acres were leased for minerals, and gross income was received therefrom by the taxpayer. Depletion allowances were taken upon that income. The lease contract, in so far as these acres were involved, was surrendered and terminated without production, so that the possibility no longer existed that any part of the income paid for the lease upon the acreage could be attributable to exhaustion of a capital asset. "As no diminution occurred in the mineral, no depletion was appropriate."

---

[1] Sec. 19.23(m)-10(c), Reg. 103, promulgated under Sec. 23(m), Int.Rev.Code, 26 U.S.C.A.Int.Rev.Code, § 23(m).

[2] Douglas v. Commissioner, 322 U.S. 275, 64 S.Ct. 988; Sneed v. Commissioner, 5 Cir., 119 F.2d 767.

Moreover, the regulation is not so phrased that it relates only to the abandonment of entire leases. It provides that if any grant of mineral rights is abandoned before the mineral has been extracted, the grantor shall restore the depletion deductions made in prior years on account of royalties on minerals paid for but not removed. The execution of the lease constituted a grant of mineral rights under the abandoned lands as well as under the lands retained.

Granting that depletion is not measured on an acreage basis, the result is the same. The statute itself provides for depletion upon gross income from "the property,"[3] which has been administratively and judicially defined to mean each separate parcel of one or more tracts of mineral property that is treated by the taxpayer as a unit.[4] When the acreage here involved was abandoned by the lessee, it necessarily became a separate "property" that could be held or re-leased as the taxpayer saw fit; as such, its gross income and depletion were subject to separate computation.

I think the decision of the Tax Court should be affirmed.

---

[3] 26 U.S.C.A. Int.Rev.Code, § 114(b) (3).

[4] Sneed v. Commissioner, supra; Sec. 19.23(m)-1(i) of Treasury Regulations 103.