ESTATE OF PHILIP LANDAU, DECEASED, HERBERT LANDAU AND SIDNEY LANDAU, EXECUTORS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40824. Promulgated February 18, 1954.

*Sidney B. Gambill, Esq.*, and *Robert F. Banks, Esq.*, for the petitioner.

*Philip O. North, Esq.*, for the respondent.

MURDOCK, *Judge:* The Commissioner, as shown by the notice of deficiency, referred to the participants in the mortgage pool as partners for tax purposes and apparently allowed the participant-partner to deduct for 1948 only his distributive share of the partnership expense for that year. Section 3797 defines a partnership to include "a syndicate, group, pool, joint venture or other unincorporated organization, through or by means of which any business, financial operation or venture is carried on and which is not, within the meaning of this title, a trust or estate or a corporation." It further provides that "A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income producing factor, whether or not such interest was derived by purchase or gift from any other person." A trust may be a partnership for tax purposes. *Dolores Crabb*, 41 B. T. A. 686, 696, affd. 119 F. 2d 772, on rehearing 121 F. 2d 1015, remanded 47 B. T. A. 916, affd. 136 F. 2d 501. Here a financial operation, in which capital was the material income producing factor, was carried on by means of this pool. Those statutory provisions mentioned above support the theory of the Commissioner's determination that the participants were partners unless it appears that the pool was a corporation or a trust for tax purposes. If it was a partnership, losses would be deductible by the participant-partners annually, no such loss as the petitioner is claiming would be deductible in 1948 (*Heiner* v. *Mellon*, 304 U. S. 271), and the determination of the Commissioner would have to stand.

The petitioner, in order to sustain its allegation of error and to obtain a favorable decision, must show that Philip sustained an income tax loss in 1948 of some larger amount due to the fact that he did not get back all of the original investment of $50,000 and, further, that the loss was not a capital loss. It must show that the pool was not a partnership for tax purposes but that some other theory of taxation was applicable under which the claimed loss would be deductible in 1948. Counsel for the petitioner, if they had any theory, supported by provisions of the revenue laws or other authority, which would lead step by step to the result sought by them, should have set it forth in their briefs for the benefit of their client and the guidance of the Court. Such a theory might explain what returns, if any, the pool was required to file; how and by whom its bad debts, losses from foreclosure, depreciation, and other deductions should have been reported currently; what the participants should have reported currently as a

result of the operation of the pool; and how the participants would be entitled, under a proper reporting by them and the pool, to take as a loss in 1948 the difference between the amount originally placed in the pool and some amount received by them from the pool. They have not set forth any theory of taxation, or references to statutory or other authority to support it, leading to the result they desire and the obvious inference is that they know of none. They are not aided by the fact that the Commissioner's briefs are similarly deficient, since the petitioner is the moving party.

The cooperative undertaking, involving 400 participants joined together, could differentiate this pool from an ordinary trust. *Morrissey* v. *Commissioner*, 296 U. S. 344. Furthermore, the pool had many of the characteristics of an association taxable as a corporation, and if it was not a partnership for tax purposes it might possibly have been an association taxable as a corporation, but the meager evidence does not justify an affirmative finding either that it was or was not an association. *Morrissey* v. *Commissioner, supra; Title Insurance & Trust Co.* v. *Commissioner*, 100 F. 2d 482; *Main-Hammond Land Trust*, 17 T. C. 942, affd. 200 F. 2d 308; *Royalty Participation Trust*, 20 T. C. 466. However, the petitioner argues that the pool was not taxable as a corporation because the petitioner recognizes that a loss to a stockholder on his investment resulting from the liquidation of the corporation is a capital loss deductible only to a limited extent and no advantage to the petitioner lies in that direction. Secs. 115 (c) and 117 (a) and (d), I. R. C. *Arthur Letts, Jr.*, 30 B. T. A. 800, affd. 84 F. 2d 760.

The pool might possibly have been a trust for tax purposes, rather than a corporation or a partnership, but the record is inadequate to show that it was taxable as a trust so that the participants could delay deduction of their capital losses until 1948 when the liquidation was completed. The bank originated the pool and intended to continue to operate it. Commonwealth was merely substituted for the bank without any change in purpose or in the nature of the entity for tax purposes, so far as the record shows. Commonwealth voluntarily chose to liquidate the pool rather than to take in new participations and to make new investments. At least there is no evidence that it was required to limit its activities to the liquidation of the pool. Its powers, rather than the extent to which they were used, must control in this connection. *Morrissey* v. *Commissioner, supra; Commissioner* v. *North American Bond Trust*, 122 F. 2d 545, certiorari denied 314 U. S. 701; *Royalty Participation Trust, supra.* The record does not show how the mortgage pool was created. No deed of trust or other document creating any trust has been introduced in evidence. Nor is there any evidence of any rules or regulations which might have been necessary in operating the pool. The bank, in the participation certificates

which it issued, stated that the mortgages were held "in trust for those of its customers who have purchased participations in said mortgages" and certificates attached to the mortgages themselves contained a somewhat similar statement. The record is not clear as to whether participation in the pool was limited to various trust estates of the bank or whether others could participate. However, the participants were the only ones who could benefit from the operation of the pool. They were entitled to receive all income and all capital distributions. The bank or its successor could and did change investments, but the record does not show how extensive their powers of management were. This record does not justify a finding that the pool was for income tax purposes a trust rather than a partnership as determined by the Commissioner or a corporation; that losses from bad debts and from the sale of foreclosed property would not be deductible currently by the participants, if it was a trust; or that the participants would be entitled to deduct, upon the final termination of the activity in which they were engaged, the difference between the amount originally invested in the pool and the total amount distributed as a return of capital.

The petitioner argues that Philip could not make proper returns because the pool made none and failed to give him the necessary information, but, of course, any failure of the pool to make required tax returns does not give Philip any deduction to which, otherwise, he would not be entitled. The petitioner also argues that the Commissioner can not deny that a loss was sustained in 1948 because he "determined that Philip sustained an 'Unallowable loss' of '$9,258.36' with respect to his investment in the pool." The determination is somewhat puzzling, particularly in the absence from the record of Philip's return for 1948, but the words used by the Commissioner in the explanation can not be interpreted fairly to mean that although a loss of $9,258.36 was actually sustained in that year, nevertheless, for some undisclosed reason it is unallowable as a deduction in that year. Rather, he seems to be saying merely that the amount is unallowable as a loss in 1948. The question would still remain, however, of whether any loss sustained was deductible in 1948.

The case of *Mortgage Trust Certificate Pool*, 42 B. T. A. 1238, which the petitioner cites, is in no way in point here because of distinguishing differences in the facts. There "Reading [the bank] commingled with its other trust funds the amounts received by it for mortgage trust certificates" and "did not administer as a separate trust fund the amounts paid in by certificate purchasers." Reading itself agreed to pay interest on the certificates which it issued and it retained the interest on the mortgages.

The petitioner cites *Adolph Klein*, 15 T. C. 26, for the proposition that the alleged loss sustained by Philip in 1948 was an ordinary loss deductible in full and not a long-term capital loss. It has failed to

demonstrate, however, that the loss it is talking about was sustained and deductible in 1948. Klein, who had purchased participation interests in a mortgage pool, reported capital gains thereon in 1944 resulting entirely from distributions from the pool made and received in 1944. The Commissioner held that they were ordinary gains and the question presented for decision was whether they were ordinary or capital gains. The alleged gains were apparently computed in the same way that the petitioner here has computed its alleged loss, but the question of whether there was a gain and when it should have been reported was not raised. The case is not authority for holding that the alleged loss in this case was sustained or deductible in 1948, since the entire amounts involved there were distributions made to and returnable by the participants in the taxable year.

*Decision will be entered for the respondent.*