## NATIONAL BANK OF COMMERCE OF SEATTLE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9426.

Circuit Court of Appeals, Ninth Circuit.

Nov. 28, 1940.

Rehearing Denied Dec. 31, 1940.

Thomas N. Fowler, of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Michael H. Cardozo, IV, and Lee A. Jackson, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

We have been petitioned to review a decision of the Board of Tax Appeals to the effect that certain recoveries on doubtful debts should have been reported as income, and that a deduction for bad debts was improper.

Marine Bancorporation owned about 90 percent of the stock of petitioner and of six smaller banks. In 1933, each of the six smaller banks charged off its books certain debts considered to be worthless or subject to criticism by either state or national bank examiners. Deductions were claimed for some of such debts in the income tax returns for 1933. The remainder of such debts were not ascertained to be worthless in 1933, so deductions therefor were not claimed in that year.

In 1933, the six smaller banks conveyed all assets owned by them to petitioner, including the charged-off debts mentioned, and as consideration therefor, petitioner assumed all liabilities of the smaller banks. In 1934, petitioner made recoveries on some of the debts which had been charged off in 1933, but for its income tax return for 1934, claimed that such recoveries were not income but return of capital. In the same return, petitioner claimed the right to deduct the amount of debts charged off by the smaller banks in 1933 but which had not been ascertained to be worthless until the following year.

Respondent determined that the recoveries should be included as income, and disallowed the deduction for bad debts, and assessed a deficiency. On petition to redetermine the deficiency the Board upheld respondent, which resulted in the instant petition to review the Board's decision to that effect.

First. With regard to the recoveries made by petitioner on the debts previously charged off by the smaller banks, the question as to the taxability thereof is: were they recoveries of capital? The Sixteenth Amendment of the Constitution authorizes Congress to levy taxes on "incomes, from whatever source derived". Such income is said to be "the gain derived from capital, from labor, or from both combined". Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. Money received from the conversion of capital represented by something other than money is not income within the meaning of the amendment, although a gain on the conversion is.

When the smaller banks made loans of their capital, the repayment of the money lent was not income to the banks, although the interest paid by the borrower for the use of the capital was. Such interest, less whatever deductions may be permitted by statute, is the amount upon which the tax is computed. However, when such a loan becomes worth-

less, the amount thereof is loss of capital, but the income tax laws permit the bank to recoup its capital by deducting from the profits or income the amount of the loss. Thus the bank does not pay a tax on all its income, but on the amount of income less the loss on the worthless debt. The debt itself then loses its nature as capital, but represents that portion of the income which was not taxed, and the capital is the money taken from the profits or income. If the loan, after being deducted from income, is paid, then the lender is receiving profit or income—otherwise the lender would double its capital on one transaction. In other words, the profits or income used to pay back the capital when the debt is charged off is represented by the worthless loan, so that when such loan is paid the profits are replaced.

Such is the theory of the income tax laws, as shown by Article 191, Treasury Regulations 77, promulgated under the Revenue Act of 1932, which provides in part: "* * * Any amount subsequently received on account of a bad debt or on account of a part of such debt previously charged off and allowed as a deduction for income-tax purposes, must be included in gross income for the taxable year in which received * * *"

Thus, if the recoveries in question had been made by the smaller banks, they would of necessity been included in the returns as income.

The difficulty here arises over the construction of a statute regarding reorganizations. We are interested in the question as to whether or not petitioner, not the smaller banks, has had income from the recoveries. While the loans were not capital assets in the hands of the smaller banks, upon sale to petitioner, such loans became capital assets in petitioner's hands. Harr v. MacLaughlin, D. C.Pa., 20 F.Supp. 27, affirmed, 3 Cir., 99 F.2d 638. Section 22(a) of the act in question, 26 U.S.C.A. Int.Rev.Acts, page 669, defines "gross income" as including "gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also * * * gains or profits and income derived from any source whatever". The language is broad enough to include the recoveries in question. The next step, is of course, the computation of the gains. Section 22(e) directs the computation to be made as provided in § 111, 26 U.S.C.A. Int.Rev.Acts, page 691. The latter section provides that the gain is the excess of the money received "over the adjusted basis provided in section 113 (b) [26 U.S.C.A. Int.Rev.Acts, page 700] for determining gain".

Such basis, according to § 113(a), 26 U.S.C.A. Int.Rev.Acts, page 696, is the "cost of such property" except in certain cases. If it were not for the exceptions the gain to petitioner would be the amount of the recoveries, less the cost to it of the loans. However, it is assumed here that the exception provided in subdivision (a) (7) applies because the transaction was a reorganization within the definition stated in § 112(i) (1) (B), 26 U.S.C.A. Int.Rev.Acts, page 513. The exception mentioned is in part: "If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor * * * decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *"

Respondent contends that "the loss occurred at the time of the transfer and as a consequence thereof". Petitioner contends that the loss, if any, did not occur when the loans were charged off "because the accounts were merely transferred from one ledger to another because of the rigid requirements of the banking laws". Petitioner points out that under the practice a bank is permitted to keep a separate set of books regarding the value of assets charged off under stringent banking rules. We think that both these contentions are erroneous.

Here, the assets had been charged off and deducted from income by the smaller banks. Such deductions are permitted by statute only if the debts were "ascertained to be worthless and charged off within the taxable year". Section 23, sub. k, 26 U.S.C.A. Int.Rev.Acts, page 673. We must presume that petitioner obeyed the law, and, therefore, the losses were sustained prior to the transfer to petitioner. Having been charged off, such loans had no

cost basis at all. The smaller banks had recouped their cost or capital from income. The loans were no longer a capital asset but represented income. By virtue of § 113(a) (7), the basis of the loans in petitioner's hands was the same as the basis of the loans in the hands of the smaller banks, which was zero. Fairbanks Court Wholesale Groc. Co. v. Commissioner of Int. Rev., 7 Cir., 84 F.2d 18.

█ Second. With regard to the deductions claimed by petitioner in 1934, the Board found that the loans for which the deductions were made "had been charged off in that year, but * * * had not been ascertained to be worthless in 1933". Such finding is not challenged. The statute permits a deduction for bad debts only if "ascertained to be worthless and charged off within the taxable year". The charge-off and the ascertainment must both occur in the same year to satisfy the statute. American Sav. Bank & Trust Co. v. Burnet, 9 Cir., 45 F.2d 548, 549. It is unnecessary, therefore, to determine what basis these loans may have had because the deduction was properly denied in any event.

Affirmed.

HEALY, Circuit Judge (concurring).

I concur in the affirmance of the Board's order. However, in respect of the first point discussed in the main opinion, my concurrence is based upon reasons other than those advanced in support of the opinion.

The transferor banks had effected no reduction in taxes by the deduction from gross income in 1933 of the charged-off debts on which the transferee (taxpayer) made recoveries in 1934. More plainly, the net losses of the transferor banks in 1933 were greater than the bad debt deductions claimed. The main opinion ignores this important circumstance. Whether or not, in such situation, the debts had a cost basis in the hands of the transferors, prior to the transfer, is a highly debatable question which we need not decide.

The Board determined, and I think correctly, that whatever value the nonledger (charged-off) assets had was lost to the transferors at the time of the transfers, hence the basis of such assets to them at that time was zero. This for the reason that the transferors received from the transferee merely an assumption

of their liabilities in the equivalent of their ledger or good assets. The latter were found from the evidence to be worth the amounts at which they were carried on the books of the transferors. There was no evidence that the transferee paid anything or parted with any consideration for the charged-off debts. Accordingly, upon the transfer without consideration, the transferors sustained a recognized loss of the full face value of such assets.

Applying to this situation § 113(a) (7), quoted in the main opinion, it necessarily follows that the basis of the charged-off debts to the transferee would be the same as in the hands of the transferors upon the transfer, that is, zero; and any collections made by the transferee on such accounts would constitute income. The result is reasonable, since it did not appear that the transferee had any investment in these debts.