**MICHAEL CARPENTER CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 8205.

Circuit Court of Appeals, Seventh Circuit.

May 26, 1943.

As Modified on Denial of Rehearing June 22, 1943.

Geo. D. Spohn and John S. Best, both of Milwaukee, Wis. (Lecher, Michael, Whyte & Spohn, of Milwaukee, Wis., of counsel), for petitioner.

Muriel S. Paul, Samuel O. Clark, Jr., Sewall Key, Helen R. Carlos, and Helen Goodner, Dept. of Justice, and J. P. Wenchel and Rollin H. Transue, Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

Petitioner, a baking company, here challenges its liability for Federal income and excess profits taxes upon sums it received in 1937 from its corporate predecessor, which sums the latter was paid by flour processors in settlement of Federal Processing Taxes paid by it in 1935. The United States Tax Court held such refund settlement taxable to petitioner and determined a $3,107.22 income tax and $240.51 excess profits tax liability of taxpayer for the year 1937. It is from this determination that taxpayer appeals.

Taxpayer purchased all its predecessor's assets in December, 1936, in exchange for taxpayer's capital stock. It was a tax free reorganization.

The predecessor, a baking company, had paid the processing taxes to its processors in 1935, at the rate of $1.38 per barrel. It had filed an income tax return for 1935 wherein the $1.38 processing tax was reported and deducted as an expense of business. Its return for 1935 showed a net loss of $27,768.29. In 1937, a settlement was made whereby the predecessor corporation received $1 per barrel refund of the processing tax, of which refund, $8,358 is the amount here involved. Said refund was transferred to petitioner, which was the assignee of all the predecessor's assets. But the predecessor's former officers filed an amended income tax return for 1935, in 1937, for their corporation, reflecting this refund, which amendment resulted simply in reducing the net loss from $27,768.29 to $15,861.79.

Taxpayer asserts multiple bases for reversal: (1) The Processing Taxes actually paid were at the rate of $1.38 per barrel and the refund was only at the rate of $1 per barrel, which constituted a loss, not a gain, subject to income tax. (2) The refunds constituted merely liquidation of capital assets and not income. (3) The accurate and proper method of handling these refunds for taxes previously deducted as expenses in former returns, is the filing of an amended return (where the tax year is still open for amendment) reflecting the true tax paid. That is what was done in the instant case.

The Government's argument runs: Taxpayer stands in the shoes of its predecessor, and uses the same basis for the determination of gain which the predecessor would have had. If the predecessor were still in business and had kept the refund which was made it, that refund would have constituted a windfall to it because it had already charged the full amount of the tax to expenses, in its income tax return for 1935, and therefore had enjoyed the benefit of the reduction of its income tax pro tanto. In other words, taxpayer had already had the benefit of this expense once, in the determination of income tax liability, and can not enjoy it a second time. The fact that the predecessor's 1935 return was amended to correct the return of this item as an expense, was immaterial, according to the Government. The former

officers of the predecessor acted erroneously in so amending, because the refund did not belong to the predecessor. It had assigned all its assets to the taxpayer, and this refund right was included therein. Upon receipt of the refund, it correctly paid it over to the taxpayer, as its property. It was not the predecessor's funds or income, and therefore could not be the basis of an amended return.

In the instant case taxpayer acquired the right to the refund, when it took over the assets of its predecessor. The Tax Court found that:

"No account receivable was carried on the books of the * * (predecessor) in connection with any of * * (the processing tax payments) nor were such payments reflected in the inventory of assets transferred * * (by the predecessor to petitioner). No accounts receivable in connection with such payments were carried on the books of petitioner prior to the receipt of such payments."

This finding has an important bearing on the disposition of this case, in view of the provision of Sec. 113(a) (7) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev. Code, § 113(a) (7), which provides:

"(a) The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \*

"(7) If the property was acquired—

\* \* \* \* \* \*

"(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or *decreased in the amount of loss recognized to the transferor upon such transfer* under the law applicable to the year in which the transfer was made. * *" (Italics ours.)

Since the Board found that this claim for refund did not appear on the transferor's books at the time of the transfer, it must be presumed that no part of the consideration which passed to the predecessor was attributable to the claim for processing tax refunds and therefore at the time of that transfer the claim was considered by the parties to be valueless and therefore was a "loss recognized to the transferor upon such transfer", within Sec. 113 and operated to decrease transferor's cost basis from $1.38 per barrel to zero. That made any receipt to the transferee on such claim, pure income.

In view of the foregoing conclusion, it is hardly necessary to discuss the reliance of the Tax Court and the contention of the Government, but we do so for the sake of clarity.

The Government contends, and the Tax Court held, (both relying on the case of National Bank of Commerce v. Com'r, 9 Cir., 115 F.2d 875) that the predecessor's cost basis was nil, because the cost thereof had been deducted in the income tax return for 1935, and so the cost of the asset had been recouped out of current income and had diminished current tax liability pro tanto. Therefore, on subsequent receipt of the refund it was "found" money—all profit to the recipient.

We hesitate to differ with the conclusion on this particular point, but there seems to us to be a serious fallacy in the logic, i. e., there was *no* gain (or reduction of tax liability) in the year in which the claim for refund was acquired. True, it is that the predecessor deducted the full cost of the processing tax payment in its current 1935 income tax return. It thereby reduced its net loss. But it did not reduce its income tax liability because that year's loss already relieved it of all tax liability.

Had the predecessor had a net gain in 1935 after deducting the processing tax payment as a cost of manufacture it would have completely recouped the cost of this claim from an income tax standpoint. And, once having charged itself and depleted its taxable income by this cost, it would constitute 100% income should it be subsequently recovered.[1] But there is a vital difference where its business operation was conducted at a loss and therefore the deduction of the expense created no financial tax benefit to it,—only a "paper" reduction of its net loss.

In 1935 the predecessor had no income from which the cost of these assets could be recouped. It enjoyed no income tax diminution by virtue of this reported deduction. Therefore we conclude that although the cost basis had been *claimed* in 1935, it was not wiped out, in this aspect of the case, from an income tax standpoint.

This conclusion is consonant with the present law (1942 Revenue Act, quoted below), which now excludes from taxable income, taxes recovered "which did not result in a reduction of the taxpayer's tax * * *."

This conclusion is also in accord with another ruling of the U. S. Tax Court (Snell Milling Co. v. Commissioner, 42 B. T.A. 1480, decided October 14, 1940. See also Mertens' Law of Federal Income Taxation, Sec. 5.16, page 214).

The National Bank of Commerce case, supra, completely ignored the question of the effect of the existence of a net loss at the time of the deduction of the expense. The failure to consider the pertinency of this angle of the case is noted in a concurring opinion thereto. We think the concurring opinion holds the key to our problem's solution when it stresses the fact that since the claim subsequently realized upon was not carried on the books of the transferor at the time of the transfer, no consideration passed therefor, so that it was wholly income to the transferee when it was subsequently realized upon.[2]

The Revenue Act of 1942, § 116(a), amends Sec. 22 of the Internal Revenue

---

[1] Nash v. Commissioner, 7 Cir., 88 F.2d 477.

[2] (Quotation from the concurring opinion.)

"The transferor banks had effected no reduction in taxes by the deduction from gross income in 1933 of the charged-off debts on which the transferee (taxpayer) made recoveries in 1934. More plainly, the net losses of the transferor banks in 1933 were greater than the bad debt deductions claimed. The main opinion ignores this important circumstance. Whether or not, in such situation, the debts had a cost basis in the hands of the transferors, prior to the transfer, is a highly debatable question which we need not decide.

"The Board determined, and I think correctly, that whatever value the non-ledger (charged-off) assets had was lost to the transferors at the time of the transfers, hence the basis of such assets to them at that time was zero. This for the reason that the transferors received from the transferee merely an assumption of their liabilities in the equivalent of their ledger or good assets. The latter were found from the evidence to be worth the amounts at which they were carried on the books of the transferors. There was no evidence that the transferee paid anything or parted with any consideration for the charged-off debts. Accordingly, upon the transfer without consideration, the transferors sustained a recognized loss of the full face value of such assets." [115 F.2d 878.]

Code, 26 U.S.C.A. Int.Rev.Code, § 22(b) (12), as follows:

"Sec. 116(a) Exclusion from income. Section 22(b) (relating to exclusions from gross income) is amended by adding at the end thereof the following new paragraph:

"(12) * * * Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph: * * *

"(B) The term 'prior tax' means a tax on account of which a deduction or credit was allowed for a prior taxable year.

\* \* \* \* \* \*

"(D) The term 'recovery exclusion', with respect to a bad debt, prior tax * * * means the amount . * * * of the deduction or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter * * * reduced by the amount excludible in previous taxable years with respect to such debt, tax, or amount under this paragraph."

Taxpayer relies heavily on this amendment. The amendment was not before the Tax Court at the time of its decision. The Government claims it is inapplicable for two reasons: (1) It was not this taxpayer's tax which had been affected by the payment, but its predecessor's; (2) it was not a *tax* payment, but a payment to the processor who paid the tax.

It is to be noted that the amendment provides that the exclusion shall be applicable to instances where the expense involved the reduction of *taxpayer's tax*.

The decision of the Tax Court is affirmed.