COMMISSIONER OF INTERNAL REVE-
NUE v. FIRST STATE BANK OF
STRATFORD.

No. 12183.

Circuit Court of Appeals, Fifth Circuit.
June 25, 1948.

Melva M. Graney, George A. Stinson
and Lee A. Jackson, Sp. Assts. to the Atty.

Gen., Theron L. Caudle, Asst. Atty. Gen. and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Dorothy Ann Kinney and Walter G. Russell, both of Amarillo, Tex., for respondent.

Before SIBLEY, HUTCHESON, HOLMES, McCORD, WALLER, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

The Commissioner is seeking the correction of errors alleged to have been made by the Tax Court in its decision in this case. The question for decision is whether certain recoveries on notes in 1942 were income to the taxpayer, the respondent on review.

On October 17, 1942, the First State Bank of Stratford declared a dividend in kind, which consisted of certain notes that had been charged off as wholly worthless, and deducted as bad debts in its income-tax returns for years previous to 1942. These notes did not appear on the bank's books. They had been kept in a case by themselves, but were brought to the directors' meeting on the above date, when the possibility of their collection was discussed. It then appeared that collections on the notes were currently being made, about $25,000 already having been collected. The payment of a dividend by the bank was next considered. Attention was called to the matter of increased taxes and the advisability of deferring a cash dividend until more would be known about the new income-tax law soon to be enacted. It was pointed out that the bank had a number of charged-off accounts of doubtful value, also real estate carried on the books at the nominal sum of one dollar. The advisability of paying a dividend in these properties was fully considered, and the following resolution adopted:

"Whereas, This bank is the owner of several thousand dollars of charged off notes, some of which may be collected in future, and the balance of which are of doubtful value.

"Now, Therefore, Be it resolved that the following charged off notes be assigned to the stockholders of this bank without recourse on it, said notes being paid as a dividend in kind and without any value being placed thereon by this bank." (A list and description of the notes followed.)

After the meeting the directors, as stockholders, further discussed the matter. It was suggested, with approval, that W. N. Price take charge of the notes for the stockholders. Within the next few days, the notes included in the dividend were endorsed to W. N. Price without recourse on the bank. Amounts thereafter collected in 1942 on the dividend notes were deposited in the bank in an account designated "W. N. Price, Special." In attempting collection of these notes, Price, who worked in the bank, did nothing that he did not do in collecting notes owed to the bank, except at various times he worked after banking hours. No system of bookkeeping for the notes was set up by the stockholders in 1942. The debtors were not notified of the assignment of their debts to the stockholders. The notes when paid were marked paid with a stamp on which appeared the bank's name, but not the stockholders'.

After October 17, 1942, and prior to January 1, 1943, collections amounting to $11,662.71 were made on these dividend notes, of which the sum of $10,548.20 was determined by the Commissioner to be taxable income of the respondent on the theory that to this extent the distribution of the dividend in kind merely represented an assignment of anticipated income, because a tax benefit had been received for it in prior years. The Tax Court reversed the Commissioner's determination, and held that the amounts so collected were not taxable to the respondent as income.

The taxpayer relies upon General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, as authority that a corporation does not realize income by its distribution of a dividend in kind. It contends that collections made on notes subsequent to their distribution as a dividend in kind are not taxable to the corporation that distributed the dividend but to their legal owners, who in this instance are the stockholders. The Commissioner ar-

gues that, having recovered its capital investment in the notes through the allowance of bad-debt deductions, the taxpayer in declaring and distributing the dividend in 1942 made an anticipatory assignment of the bank's right to collect the income represented by the notes, and was taxable on the amounts collected.

The Commissioner cites Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, as to the realization and enjoyment of taxable income. After stating the issues before it, the Tax Court in its opinion said: "We have here, on its face, a dividend in kind which under the settled law indicated in the General Utilities & Operating Co. case, supra, is no ground for realization of taxable income; and our problem therefore is: Does the fact of previous charge-off, as worthless, of the notes involved, distinguish that case? We do not think so. Though it is true that the National Bank of Commerce of Seattle case [115 F.2d 875] * * *, states * * * that after the loans there involved were charged off and deducted from income, they 'were no longer a capital asset but represented income,' yet it was held that when they were transferred to another bank, in a nontaxable reorganization, recoveries thereafter made were income, within the broad meaning of section 22(a), Internal Revenue Code [26 U.S.C.A.Int.Rev.Code, § 22(a)], * * * the transferee having the same basis of zero which the transferor had after the charge-off and deduction from income. Here, instead of transfer in a reorganization, we find a transfer in a dividend in kind, and the National Bank of Commerce case seems to us recognition of the principle that despite their nature as representing income after deduction by the transferor bank, such loans nevertheless are subject to transfer as property and may constitute income to the transferee. The Horst and Eubank cases, supra, do not help the respondent. That line of authority involves transfers of rights to income, without consideration, where it was denied that the transferor was freed from tax. Here it can not be said that there was assignment of the notes for no consideration. Distribution of a dividend in kind to stockholders is not gift, and is not without consideration—which appears inherent in the original cost of the stock upon which the dividend in kind is received. We think the logic of the Horst and similar cases is not applicable here." 8 T.C. 831.

We think we are bound under the Dobson rule by the decision of the Tax Court as to the reality and good faith of the dividend declaration, and as to the finding that the stockholders were owners of the notes after the assignment; but the facts are undisputed that these notes had been charged off as worthless, and that income-tax deductions had been taken for them by the respondent in prior years. Therefore, an issue of law is presented as to whether or not for all purposes of income-tax accounting, these notes ceased to be capital assets of the bank and became purely potential income, which when assigned to and collected by the stockholders was required to be included in respondent's gross income. Another way of stating the question of law is: Does the fact that the notes were distributed as a dividend in kind preclude the treatment of the transaction as a assignment of anticipatory income? The ultimate legal question is: What are the tax consequences of a dividend in kind that admittedly was intended to effect and did effect an anticipatory assignment of future corporate income?

It is well settled that, when a deduction for income-tax purposes is taken and allowed for debts deemed worthless, recoveries on the debts in a later year constitute taxable income for that year to the extent that a tax benefit was received from the deduction taken in a prior year.[1] Thus,

---

[1] "Section 22(b) (12) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code, § 22(b) (12), supra, exempts recoveries on bad debts only when the deduction previously taken resulted in no tax benefit to the taxpayer. The instant record does not contain copies of taxpayer's income tax returns for the year or years in which the amounts of the instant notes were deducted as bad debts, but taxpayer does not contend that Section 22(b) (12) is applicable and it appears from the

when the tax benefit for a bad debt is obtained, the debt loses its nature as capital, and becomes representative of that portion of the taxpayer's income which was not taxed.[2] As stated in the just-cited case: "The profits or income used to pay back the capital when the debt is charged off is represented by the worthless loan, so that when such loan is paid the profits are replaced."

A dividend to a shareholder by a corporation in any medium other than money is a dividend in kind, and in a formal sense the notes here represented such a dividend. Ordinarily no gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition;[3] but the rule is deemed to be otherwise where the dividend in kind is not in liquidation and consists of bad debts on account of the worthlessness of which a deduction was allowed for a prior taxable year. Whether or not the respondent corporation made an assignment of anticipatory income upon the distribution of its dividend in kind depends upon the nature of the property distributed in relation to the capital structure of the corporation. In this case, the charged-off debts no longer represented an asset except in the sense that any vested right to receive income is an asset; the notes had a basis of zero, and were no longer reflected in the capital structure of the corporation. They merely represented potential income to the extent of the tax deduction previously allowed.

The Tax Court distinguished the Horst and Eubank cases[4] because in them the anticipatory assignments were without consideration, which is not true as to a dividend in kind. We think the question of consideration is not controlling or even important here. The question is one of the realization[5] of income. Property may be disposed of by gift, sale, exchange, or abandonment, among which only abandonment could involve no taxable gain. The distribution of a dividend in kind is none of these. It is a delivery or assignment of property to its equitable owners. In this case, a sale or exchange of the notes would doubtless have resulted in the realization of a taxable gain, but no such disposition was required to realize income. The notes as collected would have been income to the corporation, and they were none the less the fruition of economic gain when collected by the assignees. It is the realization of income, rather than the acquisition of the right to receive it, that is the taxable event, and there is no reason why the rule that income tax is not to be avoided by an anticipatory assignment of income shall not apply to dividends.[6] When not received in money or property, realization may occur when the last step is taken by which one obtains the fruition of the economic gain.[7]

If the bad debts stood in place of income, if the respondent was the owner of them, if it had the power to dispose of them, and if it did dispose of them to its shareholders as a dividend in kind in anticipation of their collection, all of which is conceded: the following from the opinion in Helvering v. Horst, supra, [311 U.S. 112, 61 S.Ct. 147] is strikingly applicable: "The power to dispose of income is the equivalent of ownership of it. The

---

Commissioner's deficiency determination (See R. 15) that recoveries for which no tax benefit was received were excluded. This is no doubt the reason why the Commissioner determined that taxpayer is taxable on only $10,548.20 of the $11,662.71 collected on the notes during the taxable year." See note, pages 10 & 11 of brief for petitioner.

[2] National Bank of Commerce v. Commissioner, 115 F.2d 875, 877.

[3] Sec. 29.22(a)-20, Reg. 111.

[4] Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

[5] Realization is the act of realizing: "to realize means to acquire as an actual possession; to obtain as a result of plans and efforts; to gain; as to realize large profits." Webster's New International Dictionary.

[6] United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658.

[7] Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. Cf. Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439.

exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it. We have had no difficulty in applying that proposition where the assignment preceded the rendition of the services, Lucas v. Earl, supra [281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731]; Burnet v. Leininger, supra [285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665], for it was recognized in the Leininger case that in such a case the rendition of the service by the assignor was the means by which the income was controlled by the donor and of making his assignment effective. But it is the assignment by which the disposition of income is controlled when the service precedes the assignment and in both cases it is the exercise of the power of disposition of the interest or compensation with the resulting payment to the donee which is the enjoyment by the donor of income derived from them."

If, as it has been held,[8] there is no basis for distinguishing between the gift of interest coupons and the gift of salary or commissions, then there is none between interest coupons and notes that represent potential income. It may be said that these notes were worthless, but we know from the evidence in this record that, when the dividend in kind was declared and distributed, these formerly worthless notes had a substantial value and large sums were afterwards collected on them.[9] The income assessed in this case is less than the amounts collected on the notes during the remainder of the taxable year after the dividend was declared.

The notes were assets of the bank, and subject to transfer as other property, but they were not capital assets for income-tax purposes. The amount determined by the Commissioner to be income to the bank consisted of collections on the principal of the debts represented by the notes and perhaps of some interest that had accrued prior to the assignments. The principal was overdue and payable to the bank prior to the dividend declaration. Therefore, in declaring a dividend of the notes and assigning them without recourse, the bank assigned its vested right to receive the income that the notes represented. As the Supreme Court said in Harrison v. Schaffner, 312 U.S. 579, 581, 582, 61 S.Ct. 759, 761, 85 L.Ed. 1055: "In construing these and like provisions in other revenue acts we have uniformly held that they are not so much concerned with the refinements of title as with the actual command over the income which is taxed and the actual benefit for which the tax is paid. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl, supra; Helvering v. Horst, supra; Helvering v. Eubank, supra; Helvering v. Clifford, supra [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788]. It was for that reason that in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid."

Therefore, as a matter of law, under the anticipatory assignment-of-income rule, the respondent's declaration of a dividend, its assignment of the notes, and their subsequent collection, must be treated as if the bank had thereby realized income. The facts indisputably show that the bank was making collections on these notes and declared a dividend only of the notes on which it was expected collections would be made. Over $11,000 was collected in the two-and-a-half months of the taxable year remaining after the dividend declaration. The collections were made at the bank by an officer of the bank. No pro rata distribution to stockholders was effected prior to collections, and the notes were not in any manner apportioned among the stockholders. The dividend in kind was declared and the notes assigned by the respondent with

---

[8] Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

[9] As nearly as may be ascertained from the record, the face value of these notes was $111,254.38. Subsequent to the date of the assignment, Oct. 17, 1942, sixty to seventy per cent of the face value was collected by Price for the stockholders.

tax consequences in mind and, so far as the record shows, for no other purpose.

Like Banquo's ghost, the question that will not down is this: May a bank detach interest coupons from negotiable bonds owned by it, assign the coupons to its shareholders as a dividend in kind, and avoid the payment of income tax on the interest subsequently collected by the assignee of the coupons? In other words, by means of a dividend in kind, may a corporation avoid income taxes by doing exactly what was done (without success) by an individual by means of a gift in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655? If so, a corporation need not ever again pay an income tax on interest derived from coupons detached from negotiable bonds. To paraphrase, and apply to the instant case, the language of the court in the above case: Even though the bank never received the money, it derived money's worth from the disposition of the notes which it used in place of money in procuring a satisfaction that was procurable only by the expenditure of money or money's worth. The enjoyment of the economic benefit was realized as completely as it would have been if the bank had collected the notes in dollars and cents and paid the money as a dividend to its shareholders. To say that a bank, which has declared a dividend in kind consisting of notes representing interest or earnings, subsequently paid to its shareholders, has not enjoyed or realized the fruits of its investment or labor, because it has assigned the notes instead of collecting them itself and then paying the proceeds over to its shareholders, "is to affront common understanding and to deny the facts of common experience. Common understanding and experience are the touchstones for the interpretation of the revenue laws." 311 U.S. at pages 117, 118, 61 S.Ct. at page 147, 85 L.Ed. 75, 131 A.L.R. 655.

The avoidance of taxes may be perfectly legitimate, but it cannot be done by the anticipatory assignment of notes representing income, as a dividend in kind, and the subsequent collection of said notes by the assignees. The respondent is a banking corporation, organized and operated for profit. The acquisition of profits for its shareholders was the purpose of its creation. The collection of interest on loans was a principal source of its income. The payment of dividends to its shareholders was the enjoyment of its income. A body corporate can be said to enjoy its income in no other way. Like the "life-rendering pelican," it feeds its shareholders upon dividends. Whether they are in the form of notes or money is immaterial if the dividend is out of earnings, or consists of property purchased from earnings or which is regarded as earnings for accounting purposes.[10] The respondent exercised its power to procure payment of its income to another, which was "the enjoyment, and hence the realization," of its income.[11]

The distinction between General Utilities v. Helvering, supra, and this case lies in the difference in the character of the respective properties distributed as dividends in kind; one represented a capital asset, the other represents income. In the former, the fruit was on the tree; in the latter, the tree itself represents fruit of prior years that was not taxed. The distinction is the same as would have existed in the Horst case if the father had given his son the bond with the unearned-interest coupon attached.

Consistency is essential to fairness in income-tax accounting. This is particularly true in respect to bad-debt deductions and recovery exclusions. The worthlessness of a bad debt is a question of fact; the burden of proving it is on the taxpayer. The incentive to claim it as a deduction may be tempered by the certainty that in subsequent years, if recovered, the debt will be treated not as a capital asset but as income.[12]

---

[10] Cf. Commissioner v. Wakefield, 6 Cir., 139 F.2d 280.

[11] Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

[12] Cf. Restoration of Reserve to Income. Montgomery's Federal Taxes (1947-1948), Vol. 1, p. 763, which says: "Any balance in a reserve for bad debts is properly to be restored to income of the year in which the need for maintain-

There remains a question as to the correctness of the Commissioner's determination of the amount of income realized by the respondent upon the subsequent collection by the assignees of the notes distributed to them as a dividend in kind. It is contended that the tax liability, if any, should be measured by the market or intrinsic value of said notes when assigned, rather than (as the Commissioner determined) by the amounts collected less recoveries for which no tax benefit has been received.

Section 115(j) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 115(j), provides that, if the whole or any part of a dividend is paid to the shareholder in any medium other than money, the property received shall be included in gross income at its fair market value as of the time that it became income to the shareholder. This paragraph relates to the value of property received by a shareholder as the distributee; it does not apply to the realization of income by the corporation that is distributing the property as a dividend. We are not here determining the tax liability of the respondent's shareholders, and therefore said paragraph is not applicable to the question before us.

▆▆▆ To ascertain in this case the amount of income taxable to the respondent, it is necessary to inquire as to the time that the income is realized under the anticipatory-assignment doctrine. Is it when the dividend in kind is declared, when the assignment is made, or when actual payment is received by the shareholder? Mere unrealized appreciation in the value of property does not constitute taxable income; but this principle is not in conflict with the doctrine announced in the Horst and Eubank cases, in which unquestionably taxable income was involved. Unrealized appreciation, since it is not taxable income, is not covered by the rule as to anticipatory assignments of income. The latter rule is sui generis; it applies to debts, including bad debts, to the extent that they represent income. The acquisition of the right to receive payment of a bad debt is not necessarily a taxable event; and therefore the realization of gain by the assignor is not deemed to occur until the debt is paid to the assignee. After assignment and prior to payment the tax liability is incomplete. The rule is founded upon administrative convenience, and operates to postpone the taxable event until realization is consummated by the assignee's receipt of the money.[13] The reasoning underlying the rule, it is said, is the thought that the "taxpayer procured the satisfaction of his wants" by diverting to others the income which he could have received himself, and that thereby he enjoyed the fruits of his labor or investment. Such use of a dividend in kind, where the property distributed represents potential income, is an economic gain to the corporation in the amounts collected less recoveries for which no tax benefit has been received.[14]

Reversed.

---

ing the reserve ceases. [Geyer, Cornell & Newell, Inc., 6 T. C. 96 (A).] The question of the year in which such need no longer existed would be one of fact. However, a final unused balance in a reserve built up by deductions which did not offset income, does not become taxable income. [M & E Corporation, 7 T. C. 1276 (A).]"

13 Helvering v. Horst, 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75, 131 A. L.R. 655.

14 "In the ordinary case the taxpayer who acquires the right to receive income is taxed when he receives it, regardless of the time when his right to receive payment accrued. But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor. The rule, founded on administrative convenience, is only one of postponement of the tax to the final event of enjoyment of the income, usually the receipt of it by the taxpayer, and not one of exemption from taxation where the enjoyment is consummated by some event other than the taxpayer's personal receipt of money or property. Cf. Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 98, 51 S.Ct. 11, 13, 75 L.Ed. 234. This may occur when he has made such use or disposition of his power to receive or control the income as to procure in its place other satisfactions which are of economic worth." 311 U.S. at pages 115, 116, 61 S.Ct. at page 146, 85 L.Ed. 75, 131 A.L.R. 655.

SIBLEY, Circuit Judge (concurring).

I concur in the judgment of reversal and the reasoning of the majority opinion, but I wish to express an additional view which seems to me simpler and more fundamental.

It is true that a corporation which is contemplating a sale of its property by which gain will be realized may, before anything is done by way of sale, decide to distribute the property in kind to its stockholders and escape taxation for the gain which it did not realize. This was successfully done through a dividend in kind, each stockholder receiving his share of property actually divided, in General Utilities Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L. Ed. 154. It was successfully done by a distribution to stockholders in liquidation of the corporation in Howell Turpentine Co. v. Commissioner, 5 Cir., 162 F.2d 319. Where, however, the corporation made a contract to sell the property and afterwards called the sale off and conveyed the property to its stockholders as a liquidating dividend and the stockholders carried out the sale as made by the corporation, it was held that a finding was justified that the stockholders were in fact carrying out the corporation's sale. Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

But the present case involves no sale by a corporation or by its stockholders, but involves the proper tax treatment of a large aggregate of debts due to the corporation which in past years the corporation, on its representation that they were bad debts and a loss, had been permitted to deduct as such with a full resulting tax benefit. This deduction was not of constitutional right, but of legislative grace, and was allowed on terms stated in applicable Regulations. Beginning in 1918 Article 52 of Regulation 45 said: "Bad debts or accounts charged off because of the fact that they were determined to be worthless, which are subsequently recovered, whether or not by suit, constitute income for the year in which recovered, regardless of the date when the amounts were charged off." This language was continued down through Regulation 103, Sect. 19.42-1, under the Internal Revenue Code, when the deductions were made and allowed which are now in controversy. The restoration to income of all subsequent recoveries was a condition of the deductions. The making of this adjustment in its tax accounts with the Government became the legal and the moral duty of this corporation. When in the tax year it found it was making collections on these charged-off debts, and would likely collect considerable sums, it was not free in law or morals to evade its tax duty by turning the bad debts over to its stockholders for them to collect. The directors picked out only debts that were regarded as likely to yield collections, keeping those that were wholly bad. They did not divide them among the stockholders, but the five directors turned the hopeful debts over to one of themselves, he being vice-president and cashier of the bank, and he collected in the name of the bank, deposited the collections in the bank, and then later distributed the money to the stockholders. The stockholders returned nothing for taxation till each got his money in later years. I think there was in reality nothing divided as a dividend to the stockholders till the money was paid them, and in reality the bank made the recoveries on the charged-off debts, and the Tax Court ought to have so held. But if this were a real distribution of undivided property to the stockholders, the bank could not thus free itself of the accounting obligation which it assumed in taking the bad debt deductions. For this purpose the receipt of payments by the stockholders is receipt by their corporation. All that was said in United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, as to the force of Regulations and the ineffectualness of anticipating arrangements to evade taxes made between stockholders and their corporation, may be applied to this case. Another instance in which Regulations were held to inhere in deductions so as to require a restoration to income accordingly, though nothing was received in the tax year, is Sneed v. Commissioner, 5 Cir., 119 F.2d 767. Certiorari denied. This bank had no option to avoid incurring a tax by a lawful course. The course it took was not lawful because of the obligation assumed in taking the deductions with full tax benefits at the time.

McCORD and LEE, Circuit Judges, also concur in the additional views expressed in the above opinion.

HUTCHESON, Circuit Judge (dissenting).

I agree with the conclusion of the Tax Court that the distribution to its stockholders of the notes in question was not a realization of income by it. I agree too with the reasons it gave for so concluding. I, therefore, dissent from the opinion of the majority.

WALLER, Circuit Judge (dissenting).

I think, as did The Tax Court, that this case is controlled by General Utilities Company v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154. I think further that even if there were some sort of tax liability to the Bank, it should be measured by the reasonable, or market, value, at the time of the making of the dividend-in-kind, of the charged-off securities, rather than by the collections thereafter made by the stockholders when improved financial conditions, increase in values, enlargement of opportunities, greater availability for refinancing of loans, such as the Court of its own knowledge knows has attended the lush period since the assignments were made, aided the makers in paying obligations which they could not have paid theretofore.

Moreover, I do not think that the doctrine in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, can rightly be stretched to cover this case for the chief reason that the action of the stockholders in agreeing to accept a dividend-in-kind in lieu of a dividend in a fixed percentage cannot truly be said to be without consideration. True it is that the stockholders owned the Bank, but the law does not contemplate that banks shall be one with their stockholders.

The ascertainment of the correct amount of taxes due on income actually received is already difficult and onerous enough without, through judicial processes, adding to the taxpayer's perplexity and burden by requiring him to compute and pay taxes on income merely anticipated but never received, but which has theretofore been assigned in due and lawful course of business.

I do not consider these assignments gratuitous transfers of income already earned and readily collectible, such as characterized the interest coupons in the Horst case, supra. I, therefore, must dissent the learned and persuasive opinion of the majority in this case.