**ESTATE of Philip LANDAU, Deceased, Herbert Landau and Sidney Landau, Executors, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 11335.

United States Court of Appeals, Third Circuit.

Argued Oct. 12, 1954.

Decided Feb. 10, 1955.

Sidney B. Gambill, Pittsburgh, Pa. (Robert F. Banks and Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for petitioners.

Alonzo W. Watson, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., El-

lis N. Slack, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is a petition to review the decision of the Tax Court, which upheld the Commissioner's determination of a deficiency in decedent-taxpayer's income tax for the calendar year 1948. 21 T.C. 727.

The question presented is whether the petitioners, the executors of the decedent-taxpayer's estate, have established that an ordinary loss was sustained in the taxable year here involved. The Tax Court held they did not, and we agree.

The decedent had reported as a capital loss in 1948 an amount representing the difference between what had previously been deposited in a mortgage pool and what had been returned as "principal" over a period of years during which the pool was being liquidated. The Commissioner, in disallowing a substantial portion of the long term capital loss deduction, characterized the mortgage pool as a partnership, 26 U.S.C., 1952 ed., Section 3797(a) (2), and determined that the losses were capital losses deductible in the year of occurrence only. In their petition to the Tax Court for review of the Commissioner's action, the petitioners claimed that the decedent sustained an ordinary loss in 1948. This contention, reiterated here, is premised on the characterization of the mortgage pool as an ordinary trust originally or in liquidation, as a consequence of which the total loss would be deductible in 1948, when the final distribution was made rendering the loss certain in amount. It is contended the loss was ordinary since it does not come within the statutory description of capital losses.

The mortgage pool referred to is that which the Bank of Pittsburgh National Association ("Bank") was operating in

1930.[1] While no trust agreement, rule or regulation of the Bank was shown as the creating source of the mortgage pool, it was apparently authorized by a since-repealed Pennsylvania statute.[2] This statute enabled banks to maintain general trusts of mortgages on real estate to which could be assigned participating interests on behalf of trust estates held by such banks. It provided that no participant should be deemed to have individual ownership in any mortgage; that the bank had the right at any time to repurchase at market, but not less than face, value any mortgages from the fund, with the right to substitute therefor other mortgages. In this instance, Bank was itself an investor in the pool. Apparently it issued transferable certificates showing the participation of various trust estates, but it does not appear that such certificates left the Bank. The Bank never distributed any principal to the trust, known as the Landau Trust, referred to in footnote 1. The record does not show whether the Bank ever filed an income tax return for the mortgage pool.

In 1931, the Bank was taken over by the Comptroller of Currency and a receiver appointed. In 1932, upon the petition of one of the participants in the mortgage pool, the Orphans' Court of Allegheny County accepted the resignation of the Receiver as custodian of the mortgage pool, removed Bank as the trustee, and appointed the Commonwealth Trust Company of Pittsburgh ("Commonwealth") "to succeed as Trustee therefor."

When Commonwealth assumed its duties as successor trustee, in excess of five million dollars had been invested by Bank in about 450 real estate mortgages on behalf of more than 400 beneficiaries. It issued certificates of participation on request.

Commonwealth accepted no new investments and made no new investments, nor was a participant permitted to withdraw anything from the pool except as distributions were made by Commonwealth. Commonwealth proceeded to liquidate the pool by distributing pro rata to the participants all money received by it in excess of expenditures. Liquidation was completed in 1948. The total distributions from Commonwealth to the Landau Trust were $40,472.58 designated as principal and $14,928.82 designated as income, or a total of $55,401.40, of which $773.84 was distributed in 1948.[3]

Commonwealth did not file income tax returns for the mortgage pool. It filed accounts with the Orphans' Court showing receipts and disbursements. Receipts of interest and rent on properties acquired by foreclosure were accounted for as income and the excess over expenses charged against income was distributed as income. Receipts of principal and net proceeds from sales of real estate were accounted for as principal, and the excess thereof over expenses and expenditures charged against

---

1. The decedent-taxpayer became a participant in 1930, when he and his wife created a revocable trust with Bank as trustee and $25,000 as the corpus. In 1931, an additional $25,000 was transferred to the trustee. Under this trust, the trustee was to invest the corpus in first mortgages upon real estate, and to pay over the net income semi-annually to the grantors, who reserved the right to withdraw all or any part of the corpus upon notice. Bank used the entire corpus to acquire for the trust participation in its mortgage pool. The record shows no change in the trust after its creation.

The petitioners treat the decedent-taxpayer as the direct beneficiary of the mortgage pool, since they were unable to establish that the decedent's wife had an adverse interest, or that the trust was not revoked.

2. Act of 1874, April 19, P.L. 73, Section 29, cl. V., as amended, Act of 1925, April 6, P.L. 152, 15 P.S. § 2514.

3. The difference between the $40,472.58 distributed as "principal", and the original investment of $50,000.00 represents the amount which the decedent-taxpayer treated as a long term capital loss, and which the petitioners contend was an ordinary loss allowable in full, in 1948. The decedent used the round figure, $9,550.00.

principal were distributed as principal. The accounts, five of which were filed, were approved by the Orphans' Court; the foreclosures and distributions were authorized by the said Court. Commonwealth made 50 distributions designated income, and 34 designated principal. It did not include gains from sales in the income distributions, deduct losses from income, or take depreciation into account in any way. Properties acquired by foreclosure were entered on its books at the amount due on the mortgage, plus foreclosure costs.

The Tax Court, noting the paucity of evidence on what it deemed critical facts, particularly as to the creation of the mortgage pool, held that the petitioners had not sustained their burden of establishing error of the Commissioner's determination; that they had not shown the mortgage pool was or became an ordinary trust, or that the loss must be treated as an ordinary loss. The Commissioner points out, too, that the petitioners have not established the amount of the loss. The Tax Court determined that the mortgage pool was justifiably treated as a partnership, since it was a financial operation in which capital was the material income-producing factor; accordingly, losses would be deductible by the partners annually and no such loss as petitioners claim would be allowable in 1948. Heiner v. Mellon, 1938, 304 U.S. 271, 58 S.Ct. 926, 82 L. Ed. 1337. It further determined that the mortgage pool might be an association taxable as a corporation, Morrissey v. Commissioner of Internal Revenue, 1935, 296 U.S. 344, 56 S.Ct. 289, 80 L. Ed. 263, and that the pool had many such characteristics, but that the evidence was too meager to justify an affirmative finding that it was or was not an association.[4] Finally, it determined

that the pool might possibly be an ordinary trust for tax purposes, but again the evidence would not permit an affirmative finding. It noted particularly the lack of evidence as to the establishment of the pool; that Commonwealth was merely substituted for the Bank without any change in purpose and had voluntarily undertaken to liquidate the pool; that the Bank or its successor could and did change investments, but that the record did not show how extensive the powers of management were.

The petitioners place primary emphasis upon the taking over of the mortgage pool by Commonwealth in 1932. They say that whatever the mortgage pool was prior thereto, it nevertheless became a liquidating trust, which is an ordinary trust for tax purposes.

In the field which requires distinguishing between ordinary trusts and associations taxable as corporations, this Court has already placed itself on record, that it is the powers granted to the so-called trustee, rather than non-use of them, which controls. Pennsylvania Co. for Insurances on Lives and Granting Annuities v. United States, 3 Cir., 1943, 138 F.2d 869, certiorari denied 321 U.S. 788, 64 S.Ct. 787, 88 L.Ed. 1079; Pennsylvania Co. for Insurances on Lives and Granting Annuities v. United States, 3 Cir., 1944, 146 F.2d 392. The petition filed in the Orphans' Court of Allegheny County did not seek a liquidation of the pool, but only that the defunct Bank be removed and "a trustee be appointed by the Court to administer the trust". The order of the Orphans' Court appointed Commonwealth "to succeed as trustee". Accordingly, the Tax Court correctly concluded that the authority and power of Commonwealth in the administration of the pool was not restricted. Nor do we believe that the approval by

---

4. Petitioners resist the characterization of the pool as an association taxable as a corporation. Apparently no advantage could be gained otherwise, for the Commissioner contends that a loss to a stockholder on his investment resulting from the liquidation of a corporation is a capital loss deductible to a limited extent and that all payments in liquidation are treated as returns of principal whether they are so designated or not. Letts v. Commissioner of Internal Revenue, 9 Cir., 1936, 84 F.2d 760, 762; Tyrrell v. Commissioner, 5 Cir., 1937, 91 F.2d 500, certiorari denied 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 577.

the Orphans' Court of the various petitions and accounts filed by Commonwealth effected such restriction; such action did not alter the powers of Commonwealth, but merely approved its exercise of them.

There is no doubt that on the evidence in this case the characterization of the mortgage pool for tax purposes is difficult. A partnership is defined to include a syndicate, group or pool by means of which a business or financial operation is carried on and which is not a trust or corporation. 26 U.S.C., 1952 ed. Section 3797(a) (2). We have no hesitancy in concluding as did the Tax Court, that this pool was a financial operation in which capital was the material income-producing factor. But there were elements suggestive of an association taxable as a corporation. Morrissey v. Commissioner, supra. Especially to be noted is the fact that the trustee had the power to and did change investments. Commissioner of Internal Revenue v. North American Bond Trust, 2 Cir., 1941, 122 F.2d 545, certiorari denied 314 U.S. 701, 62 S.Ct. 479, 86 L.Ed. 560; Commissioner of Internal Revenue v. Chase National Bank, 2 Cir., 1941, 122 F.2d 540, 144 A.L.R. 1043; Pennsylvania Co. for Insurances on Lives and Granting Annuities v. United States, 3 Cir., 1943, 138 F.2d 869, certiorari denied 321 U.S. 788, 64 S.Ct. 787, 88 L.Ed. 1079. In addition, the number of participants, the fact that they were the sole income and principal beneficiaries, the transferability of participating certificates, and the participation of the Bank itself, raise serious doubt as to whether the mortgage pool was an ordinary trust.

We recognize the difficulties which arise where litigation follows by many years the events which are placed in controversy, after records are destroyed or lost, and the most likely witnesses are no longer available. With ingenuity, the petitioners have tried to steer a course through to the result they seek. ■■ Nevertheless, upon the review of the record we are of the opinion that the petitioners have failed to establish that the Tax Court was clearly erroneous in its determination that they had not met their burden of proving that the Commissioner had erred. The Commissioner's disallowance of a deduction is presumptively correct and the burden is on the petitioners to overcome it. MacMaster v. Commissioner of Internal Revenue, 3 Cir., 1932, 62 F.2d 81, 82; Kuehner v. Commissioner of Internal Revenue, 1 Cir., 1954, 214 F.2d 437, 440.

For the reasons stated the decision of the Tax Court will be affirmed.