T.C. Summary Opinion 2015-61

UNITED STATES TAX COURT

RICHARD IRWIN WIDEMAN AND KRISTINA NOVAK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23018-12S.                      Filed October 5, 2015.

Richard Irwin Wideman, pro se.

Richard Irwin Wideman (specially recognized), for petitioner Kristina

Novak.

<u>Sarah A. Herson</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 13, 2012 (notice), respondent determined a $3,731 deficiency in petitioners' 2009 Federal income tax and imposed a $746 section 6662(a) accuracy-related penalty.  After concessions,[2] the issues for decision are whether petitioners:  (1) are entitled to a deduction in excess of the amount respondent allowed for telephone expenses; (2) are entitled to a deduction for miscellaneous expenses; (3) are entitled to a casualty loss deduction; and (4) are liable for a section 6662(a) accuracy-related penalty.

---

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code of 1986, as amended, in effect for 2009.  Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The parties now agree that:  (1) petitioners are not required to include $13,056 in the income reported on the Schedule C, Profit or Loss From Business, included with their 2009 Federal income tax return; (2) $1,984 of interest is not includable in petitioners' income; (3) petitioners' income is increased by $3,468 (omitted wage income--respondent concedes that petitioners are entitled to a withholding credit of $19 related to this item); and (4) petitioners are entitled to a $1,700 deduction for office expenses in excess of the amount allowed in the notice.

## Background

Some of the facts have been stipulated and are so found. At all times relevant, petitioners were married to each other. At the time the petition was filed, they resided in California.

Mr. Wideman (petitioner) is an attorney. He has been licensed to practice in California since 1967 but is not admitted to practice before this Court. Before the year in issue petitioner taught at the University of Virginia School of Law and the Washington and Lee School of Law.

In 2006 petitioners purchased a 10-acre parcel of land in Santa Ynez, California, on which they built their residence and various other structures. These structures include three barns and a horse riding arena (riding arena) used in a horse boarding and sales business operated by Santa Ynez Valley View Farm, LLC (Farm), a California limited liability company which petitioners formed in 2007 and, at all times relevant, wholly owned. Farm is treated as a partnership for Federal taxation purposes; its 2009 Form 1065, U.S. Return of Partnership Income, shows an ordinary business loss of $96,127, which is taken into account in the negative $55,966 "adjusted gross income" reported on petitioners' 2009 joint Federal income tax return (return). The Form 1065 includes a depreciation schedule which shows that a deduction for depreciation on the riding arena is

taken into account in the loss reported on that return. The income reported and the deductions claimed on the Form 1065 are computed using the cash receipts and disbursements method of accounting (cash method).

Construction of the riding arena began in the middle of 2006 and was completed in early 2007. The depreciation schedule attached to the Form 1065 suggests that the initial cost of the riding arena was $150,000. The riding arena is a complicated structure, and proper construction was required to ensure the safety of the horses and riders that used it. As it turned out, defects in the construction of the riding arena required petitioners to expend more than $100,000 in 2007 and 2008 in order to remedy the defects. Petitioners sued the original contractor for the defective construction and in 2009 settled the lawsuit for a payment of $50,000.

During 2009 petitioner conducted his law practice from an office in his residence (home office). According to petitioner, the home office was shared with Ms. Novak, who is a licensed real estate agent. Petitioners did not report any earnings from, or claim any deductions attributable to, Ms. Novak's real estate activity on their return. Petitioners reported income and claimed deductions attributable to petitioner's law practice on a Schedule C included with petitioners' return, which was prepared by a certified public accountant. Petitioners deducted

various expenses related to petitioner's law practice on that Schedule C, including a $12,698 deduction for "other expenses", consisting, in part, of telephone expenses that total $7,962 and $25 identified as "miscellaneous" expenses. The telephone expenses include charges for three cellular telephone lines, two land telephone lines (one servicing petitioners' residence and the other servicing one of the barns), and Internet service. The income reported and deductions claimed on the Schedule C are computed under the cash method.

Petitioners' return also includes a Schedule A, Itemized Deductions, on which petitioners claimed a $69,100 casualty loss deduction.

In the notice respondent, among other things: (1) disallowed half of the deduction for telephone expenses and the entire deduction for miscellaneous expenses claimed on the Schedule C; (2) disallowed the casualty loss deduction claimed on the Schedule A; and (3) imposed a section 6662(a) accuracy-related penalty. According to the notice, respondent disallowed the deductions claimed on the Schedule C because petitioners failed to establish that the underlying expenses were ordinary and necessary trade or business expenses and/or because petitioners failed to substantiate the amount paid or incurred for each expense. Respondent disallowed the casualty loss deduction petitioners claimed on the Schedule A because petitioners "did not establish that (a) a casualty or theft

occurred, and (b) any loss was sustained". Respondent also imposed a section 6662(a) accuracy-related penalty for "negligence or disregard of rules or regulations." Other adjustments made in the notice are computational or have been resolved by the parties and will not be discussed.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate expenses for deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid

---

[3]Petitioners do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) are applicable here, and we proceed as though they are not.

or incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec.

1.6001-1(a), Income Tax Regs.

## I. Schedule C Deductions

Taxpayers may deduct ordinary and necessary expenses paid or incurred in

connection with operating a trade or business. Sec. 162(a); Boyd v.

Commissioner, 122 T.C. 305, 313 (2004). Petitioners claimed various deductions

on the Schedule C for petitioner's law practice; some have been allowed and some

disallowed. The parties now dispute only respondent's disallowances of one-half

of the telephone expenses and the entire amount of miscellaneous expenses.

### A. Telephone Expenses

According to petitioners, the telephone expenses relate to the five telephone

lines described above. More specifically, petitioners attribute one cellular

telephone line to Ms. Novak's business, two cellular telephone lines to petitioner's

law practice, one landline telephone to the home office, and the other landline

telephone to Farm. The record does not allow for a particular phone service/line

to be identified with a particular activity or location. It does not appear that

petitioners subscribed to any other telephone services during 2009.

All of the telephone expenses are included in a deduction claimed on the

Schedule C for petitioner's law practice. This is fundamentally wrong. In general,

if otherwise deductible as a trade or business expense, the expense is deductible by the taxpayer who operates/owns the trade or business. Cf. Deputy v. DuPont, 308 U.S. 488, 494 (1940). At least two of the telephone services had nothing to do with petitioner's law practice. If it was otherwise deductible, whichever telephone service expense was attributable to the trade or business of Farm should have been shown as a deduction on the Form 1065.[4] Furthermore, because there is no showing that Ms. Novak was actively conducting any trade or business during 2009, whichever telephone service expense is attributable to her must be considered a nondeductible personal expense. See sec. 262(a). Moreover, since there is no showing that petitioners' residence was serviced by a telephone service other than the one identified with petitioner's home office, the cost of at least one of the two landlines is also treated as a nondeductible personal expense even if that landline was used in the home office. See sec. 262(b).

We do not share petitioners' view that respondent "arbitrarily" disallowed one-half of the telephone expense deduction. Instead, in the absence of specific information showing which telephone service and how much of the charges should be allocated to which petitioner or location, we find that petitioners have failed to

---

[4]Petitioners' argument that it made no difference where Farm's telephone expense was deducted is rejected if only because of the effect the deduction would have on petitioner's sec. 1401 tax (tax on self-employment income).

show that they are entitled to a deduction for telephone expenses in excess of the amount respondent allowed.

## B. Miscellaneous Expenses

Petitioners offered no explanation for the $25 deduction for miscellaneous expenses shown on the Schedule C. An unexplained expense is hardly deductible. Accordingly, respondent's disallowance of petitioners' claimed deduction for miscellaneous expenses is sustained.

## II. Loss Deduction

According to petitioners, the additional expenditures to correct the defects in the riding arena equate to a loss for which they[5] are entitled to a deduction. On their return petitioners characterized the loss as a casualty loss and claimed a $69,100[6] deduction for it on the Schedule A. As noted, this deduction is disallowed in the notice. At trial petitioners, to some extent, retreated from the position taken on their return and alternatively argued that they are entitled to a

---

[5]Although we see it differently, for the sake of simplicity, we will go along with petitioners' suggestion that it matters not whether the loss, if otherwise deductible, should be claimed as a deduction on Farm's Form 1065 or in some manner or another on their return.

[6]It is unclear exactly how this amount was computed. We expect that it takes into account the expenditures paid to correct the defective construction and the $50,000 recovered from the original contractor.

$69,100 deduction for a loss sustained in a trade or business. We address petitioners' entitlement to a loss deduction under either theory.

A. Casualty Loss

Section 165(a) allows as a deduction any loss sustained during a taxable year and not compensated for by insurance or otherwise. Section 165(c) limits the allowance of losses in the case of individuals.[7] Subject to certain limitations, section 165(c)(3) provides that an individual is entitled to a deduction for the loss of property not connected with a trade or business or a transaction entered into for profit if the loss results from "fire, storm, shipwreck, or other casualty, or from theft."

Respondent argues, and we agree, that no event occurred that would qualify as a "casualty" as that term is used in section 165(c)(3). As we have noted: "In numerous cases the courts have stated the term 'other casualty' must be restricted to mean events of the same kind or the same characteristics as those specifically enumerated in the statute. The casualties enumerated are unusual, and unexpected events * * * caused by a sudden or destructive force." Daugette v. Commissioner, T.C. Memo. 1977-56. Expenses paid or incurred to correct damage caused by faulty construction methods are not deductible as a casualty loss. See, e.g.,

---

[7]The provisions of sec. 165(c) also apply to partnerships. See sec. 703(a).

Matheson v. Commissioner, 18 B.T.A. 674 (1930), aff'd, 54 F.2d 537 (2d Cir. 1931); see also Portman v. United States, 683 F.2d 1280, 1281 (9th Cir. 1982); McDaniel v. Commissioner, T.C. Memo. 1980-557; Berry v. Commissioner, T.C. Memo. 1969-162.[8]

In this case the defective construction allowed sinkholes to form in the riding arena that made it unsafe for use; there was no independent, sudden, or unexpected event that caused the damage to the property. Accordingly, petitioners are not entitled to a casualty loss deduction for the extra expenditures paid to correct the defects in the original construction of the riding arena.

B. Property Loss Incurred in a Trade or Business

Section 165(c)(1) and (2) allows for the deduction of a loss incurred in a trade or business or a transaction entered into for profit. For a taxpayer to be allowed a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and actually sustained during the taxable year. Sec. 1.165-1(b), Income Tax Regs. In general, to be entitled to a

---

[8]We are aware that deductions for casualty losses have been allowed in faulty construction cases if there has been a subsequent, unexpected event apart from the faulty construction. See Hayutin v. Commissioner, T.C. Memo. 1972-127 (finding flood damage proximately caused not by faulty construction of taxpayer's home but by plumber stepping on unprotected pipe), aff'd, 508 F.2d 462 (10th Cir. 1974). That is not the situation here.

deduction for the loss of a business asset, the taxpayer must either sell the asset or, if its usefulness in the business has been destroyed and it is not sold, must permanently discard it from use in the business.  Abrams v. Commissioner, T.C. Memo. 1981-231.  A loss deduction is generally not permitted where there is a mere shrinkage in value; rather, there must be a complete elimination of all value plus a recognition by the owner that his property no longer has any utility to him by means of a specific act proving his abandonment of all interest in it.  Id.; see New York Sun, Inc. v. Commissioner, 27 T.C. 319, 328 (1956), aff'd, 253 F.2d 487 (2d Cir. 1958); sec. 1.167(a)-8, Income Tax Regs.  The abandonment or permanent withdrawal constitutes the "closed and completed transaction, fixed by identifiable events" required as a prerequisite to deduction.  Section 1.165-2(c), Income Tax Regs., refers us to section 1.167(a)-8, Income Tax Regs., which provides that withdrawal of depreciable property used in a trade or business may be accomplished by several methods.  Withdrawal may be accomplished by sale, exchange, retirement, or "actual abandonment".  See Orozco v. Commissioner, T.C. Memo. 1994-407, aff'd without published opinion, 67 F.3d 314 (11th Cir. 1995); sec. 1.167(a)-8, Income Tax Regs.  It follows that a taxpayer may not normally claim a loss deduction for mere damage to an asset which he continues to use in his trade or business.

The riding arena was not sold, abandoned, or permanently withdrawn from use during 2009. Accordingly, petitioners are not entitled to the loss deduction here in dispute.[9]

III. Section 6662(a) Accuracy-Related Penalty

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty.

Section 6662(a) imposes a 20% accuracy-related penalty on the portion of "an underpayment of tax required to be shown on a return" if the underpayment is due to negligence or to one or more of the other reasons listed in subsection (b). Respondent bears the burden of production with respect to the imposition of a section 6662(a) accuracy-related penalty. See sec. 7491(c). The section 6662(a) accuracy-related penalty does not apply to any portion of an underpayment as to which there was reasonable cause and the taxpayer acted in good faith. Sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs.

_____

[9]Petitioners' argument that the expenditures should be treated as currently deductible repairs is also unavailing. First, as cash basis taxpayers, neither petitioners nor Farm would be entitled to the deduction for 2009 because the expenditures were made in prior years. Second, as respondent suggests, the expenditures should be treated as capital, which would increase petitioners' basis in the asset. See sec. 263; Jenkins v. Commissioner, T.C. Memo. 1982-407; see also Driscoll v. Commissioner, 147 F.2d 493 (5th Cir. 1945), aff'g in part, rev'g in part a Memorandum Opinion of this Court; sec. 1.263(a)-1(a)(1), Income Tax Regs.

According to respondent, petitioners are liable for a section 6662(a) penalty on the entire underpayment (which, in this case, equals the deficiency) upon the ground of negligence. In his pretrial memorandum respondent argues that petitioners "have failed to present respondent with sufficient information or documentation to substantiate reasonable cause or show that the understatement of tax for the 2009 tax year was not the result of negligence or disregard of rules of regulations." Respondent's pretrial memorandum goes on to acknowledge his burden of production under section 7491(c) and argues that his burden has been satisfied because petitioners "have not complied with all substantiation requirements or maintained all records under the Code".

We are mindful that the failure to keep adequate records to substantiate expenses underlying claimed deductions can support the imposition of the section 6662(a) accuracy-related penalty on the ground of negligence, see sec. 1.6662-3(b)(1), Income Tax Regs., but, for the most part, we agree with respondent only with respect to those adjustments petitioners conceded. With the exception of the deduction for miscellaneous expenses, the disallowances of the deductions addressed in this opinion are based upon technical reasons rather than lack of substantiation. We can envision a case where the mere disallowance of a deduction on a technical ground, in and of itself, could give rise to the taxpayer's

liability for a negligence penalty, but this is not that case. Petitioners are liable for a section 6662(a) penalty, but only with respect to the underpayment of tax attributable to: (1) the adjustments they otherwise conceded and (2) the disallowance of the deduction for miscellaneous expenses.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.